PEARL B. SWANSON v. MINNEAPOLIS-HONEYWELL REGULATOR COMPANY.
VICTOR CHRISTGAU, DIRECTOR OF DIVISION OF EMPLOYMENT AND SECURITY, RESPONDENT.[1]

December 11, 1953.

No. 35,988.

---

[1]Reported in 61 N. W. (2d) 526.

*Douglas Hall* and *Hall, Smith & Hedlund,* for relator.

*Dorsey, Colman, Barker, Scott & Barber, John W. Windhorst,* and *Horace Hitch,* for respondent Minneapolis-Honeywell Regulator Company.

*J. A. A. Burnquist,* Attorney General, and *K. D. Stalland,* Assistant Attorney General, for respondent Victor Christgau.

DELL, CHIEF JUSTICE.

Certiorari to review a decision of the division of employment and security disqualifying relator for unemployment compensation benefits.

Relator is the mother of two children, ages five and eight. Her husband, a diabetic, has been hospitalized several times and because of his illness has had difficulty securing and retaining employment. For the last year and a half he was employed as a baker, which required that he commence work at 6 a. m. His working hours and illness largely placed the responsibility of caring for the children upon relator. Because of his condition and his medical and hospital expense, it was necessary that relator assist in providing for the support of the family. She was employed in Minneapolis by respondent Minneapolis-Honeywell Company, on the day shift, starting at 8 a. m. This permitted her, at 7:30 a. m. on her way to work, to place the youngest child in a nursery home where he could be cared for while relator was working. On October 19, 1951, relator was laid off from work through no fault of her own, and on October 22

she registered for unemployment benefits. About October 25 respondent company advised her that she could work in another of their plants, which was located on the opposite side of the city. She was told she would be required to commence work at either 7 or 7:30 a. m. She informed respondent company that before she could accept employment she would have to make arrangements for the care of her child and promised to contact them in a day or two. Being unable to leave the child at the nursery school that early in the morning or to otherwise make satisfactory arrangements for his care, she declined to accept the offered employment. About October 29 she advised the Minneapolis employment office that she had refused the offered employment. On November 26 she returned to her work on the 8 a. m. shift at respondent company's plant where she had formerly been employed.

During the period of unemployment from October 22 to November 25 she received unemployment benefits totalling $92.00. On March 21, 1952, relator was informed that she was disqualified for the unemployment benefits she had been paid and demand was made upon her for repayment of the $92.00. An appeals tribunal affirmed the disqualification, and the representative of the director of the division of employment and security sustained the decision of the appeals tribunal.

The material issues raised by the parties for review here are: (1) Was the relator "available for work" under M. S. A. 268.08, subd. 1(3)? (2) Did the relator fail, without "good cause," to accept suitable work when offered as required by § 268.09, subd. 1(5)?

■ The material portions of the statutes involved here provide for the payment of unemployment benefits where an employee, able to work and available for work, is unemployed unless the director finds that the employee, without good cause, has failed to accept suitable work when offered to him. The facts are not in dispute. The essence of this appeal is whether the statutes have been properly interpreted and correctly applied to the facts.

It is relator's contention that the issue of availability is not before us for review since availability was not, by any express findings,

made the basis of the decision below. Respondent company contends that, since availability is an essential requirement which must be determined before the question of good cause arises, availability was necessarily determined although the determination was not expressly stated in the findings and is, therefore, properly before us for review. We are in agreement with the position urged by respondent company and consider the issue of availability properly here.

The requirement of availability arises under § 268.08, subd. 1(3), which provides:

"An individual shall be eligible to receive benefits with respect to any week of unemployment only if the director finds that:

\*   \*   \*   \*   \*

"(3) He was able to work and was available for work, \* \* \*;"

No issue as to whether relator was able to work is raised here. The problem is: Did relator's refusal to accept employment at either 7 or 7:30 a. m. make her unavailable for work? "Available for work" is not defined in the statute, nor have we heretofore been called upon to define the term. It cannot be defined in precise terms which can be mechanically applied to the facts in each case, nor can there be any definite rule stated as to what precise facts constitute availability.[2] The statutes do not contemplate total availability under all circumstances since they provide that the work need not be accepted unless it is suitable and the work also may be refused if good cause exists. § 268.09, subd. 1(5).

Numerous attempts to define the elements constituting availability have been made by the courts of other jurisdictions. In Fleiszig v. Board of Review, 412 Ill. 49, 104 N. E. (2d) 818, the court stated:

"\* \* \* the phrase 'available for work' is designed to test his continued and current attachment to the labor force."

[2]Schettino v. Administrator, 138 Conn. 253, 83 A. (2d) 217; Mohler v. Dept. of Labor, 409 Ill. 79, 97 N. E. (2d) 762, 24 A. L. R. (2d) 1393; Hunter v. Miller, 148 Neb. 402, 27 N. W. (2d) 638; Leonard v. Unemployment Comp. Bd. of Review, 148 Ohio St. 419, 75 N. E. (2d) 567; 48 Am. Jur., Social Security, Unemployment Ins. § 35.

In Roukey v. Riley, 96 N. H. 351, 352, 77 A. (2d) 30, 31, the court stated:

"* * * The availability requirement is said to be satisfied when an individual is willing, able and ready to accept suitable work which he does not have good cause to refuse, that is, when he is generally attached to the labor market. In other words, the purpose of the availability requirement is to test the claimant's attachment to the labor market."

In Schettino v. Administrator, 138 Conn. 253, 260, 83 A. (2d) 217, 220, it is stated: "He must be exposed unequivocally to the labor market." In Unemployment Comp. Comm. v. Tomko, 192 Va. 463, 467, 65 S. E. (2d) 524, 527, 25 A. L. R. (2d) 1071, the court stated:

"As used in the statute, the words 'available for work' imply that in order that an unemployed individual may be 'eligible to receive benefits' he must be willing to accept any suitable work which may be offered to him, without attaching thereto restrictions or conditions not usual and customary in that occupation but which he may desire because of his particular needs or circumstances. Stated conversely, if he is unwilling to accept work in his usual occupation for the usual and customary number of days or hours, or under the usual and customary conditions at or under which the trade works, or if he restricts his offer or willingness to work to periods or conditions to fit his particular needs or circumstances, then he is not available for work within the meaning of the statute."

Cases of other jurisdictions, in which specific facts were considered to determine whether an applicant was available for work, shed further light on the subject. In Ford Motor Co. v. Unemployment Comp. Comm. 316 Mich. 468, 25 N. W. (2d) 586, claimant was employed on the afternoon shift. She was laid off from work and informed the claims examiner of the commission that she was not available for work except on the afternoon shift. The reason given for limiting herself to that shift was that she had two sons and wished to prepare their breakfasts and see them off to school. The court stated (316 Mich. 473, 25 N. W. [2d] 588):

"* * * There is nothing in the statute to justify the conclusion that the legislature intended a claimant might limit his employment to certain hours of the day where the work he is qualified to perform is not likewise limited. It may be assumed that, in a so-called 'around-the-clock' operation, the work on different shifts does not vary in character. When claimant stated she would not accept work except on the afternoon shift, she clearly made herself unavailable for work of the character that she was qualified to perform. She took such position, not for any reason connected with the character of the labor itself, but rather because of the situation in her home."

In Judson Mills v. S. C. Unemployment Comp. Comm. 204 S. C. 37, 28 S. E. (2d) 535, unemployment benefits were denied claimant where she could not work on the third shift because of her children, even though she could have worked on the first or second shifts. Also, where claimant could only work between 1 p. m. and 9 a. m. because he had quit his full-time job in order to attend school, he was not available. Keen v. Tex. Unemployment Comp. Comm. (Tex. Civ. App.) 148 S. W. (2d) 211. The same result was reached where claimant had been working in her home and then moved to another city where she was unable to find work she could perform in her home and could not accept factory work because of her child. Salavarria v. Murphy, 266 App. Div. 933, 43 N. Y. S. (2d) 899. Claimant was found unavailable where she refused to go back to her former position while waiting for new employment at higher wages. W. T. Grant Co. v. Board of Review, 129 N. J. L. 402, 29 A. (2d) 858.

The Ohio court held that the availability requirement had not been met where a claimant refused to work on Saturdays because it was against his religion to work on that day. Kut v. Albers Super Markets, Inc. 146 Ohio St. 522, 66 N. E. (2d) 643. There the court stated (146 Ohio St. 524, 66 N. E. [2d] 644) :

"The statute does not designate particular days of the week. It provides that in order to be entitled to benefits a claimant must be 'able to work and available for work in his usual trade or occupation, or in any other trade or occupation for which he is reason-

ably fitted.' Hence, he must be available for work on Saturday if this is required by his usual trade or occupation, as in this instance."

The Massachusetts supreme court likewise held that claimant was unavailable where she objected to work because nine or ten people worked in the office and she desired to work with only two or three employees. Corrado v. Director of Div. of Employment Security, 325 Mass. 711, 92 N. E. (2d) 379. In Claim of Krieger, 279 App. Div. 681, 107 N. Y. S. (2d) 916, 918, where the claimant refused offered employment for three or four days a week with hours from 9 a. m. to 3 or 4 p. m. because it was not full-time work and she preferred working from 10 a. m. to 6 p. m. and not on Saturdays, the New York supreme court stated:

"* * * It [the statute] was never intended to guarantee a claimant employment entailed with each and every condition that a claimant might impose."[3]

The basic purpose of the availability requirement is to test the claimant's attachment to the labor market. Roukey v. Riley, 96 N. H. 351, 77 A. (2d) 30. As to when there is such a market, in Reger v. Administrator, 132 Conn. 647, 651, 46 A. (2d) 844, 846, quoting 55 Yale L. J. 124, it was stated thus:

"* * * A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; * * *."

In deciding whether, under the specific facts, a claimant is attached to the labor market and available for work under the employment and security act, we must construe the act in the light

[3]See, also, Leclerc v. Administrator, 137 Conn. 438, 78 A. (2d) 550; Haynes v. Unemployment Comp. Comm. 353 Mo. 540, 183 S. W. (2d) 77; Valenti v. Board of Review, 4 N. J. 287, 72 A. (2d) 516; Copeland v. Okl. Employment Security Comm. 197 Okl. 429, 172 P. (2d) 420; Jacobs v. Office of Unemployment Comp. 27 Wash. (2d) 641, 179 P. (2d) 707; Annotations, 158 A. L. R. 396 and 25 A. L. R. (2d) 1077.

of the declared public policy as expressed in the act.[4] It is clear that the legislature was aware of the social evils accompanying involuntary unemployment. In order to give effect to the act a person must be ready and willing to accept suitable work. The act is intended to benefit persons who are unemployed through no fault of their own and who are genuinely attached to the labor market. We hold that a person is not available for work within the meaning of the statute unless he is accessible or attainable for work when suitable work is offered at such hours as are customary in the type of employment to which he is suited.

When relator refused to accept work commencing at either 7 or 7:30 a. m. she clearly made herself unavailable for work of the character that she was qualified to perform. She took such a position, not for any reason connected with the character of the work itself, but rather because of the situation in her own home. There is nothing in the statute to justify the conclusion that the legislature intended that a claimant might limit her employment to certain hours of the day where the work she was qualified to perform is not likewise limited.

■ While there is no issue as to whether the work was suitable, nevertheless, in view of the public interest involved we have decided

[4]M. S. A. 268.03 provides:

"As a guide to the interpretation and application of sections 268.03 to 268.24, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burdens. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during period of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state will be promoted by providing, under the police powers of the state for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

to construe the term. We consider "suitable work," within the meaning of the employment and security act, to be such work as the employee customarily performs or such as he is reasonably fitted to perform by past experience or training and which is otherwise suitable under the provisions of § 268.09, subd. 1(5).

■ The term "good cause" like "available for work" and "suitable work" is broad and flexible. These terms have caused a great deal of confusion and have been intermingled by the courts. It is not unusual for one court to embrace a certain set of facts under one of the requirements and for another court, under similar facts, to place them under one of the other statutory requirements. As an example of the confusion that exists let us assume, for illustrative purposes, that a claimant had been working on the day shift and was then laid off through no fault of his own; that he is thereafter offered work on the night shift but refuses. An examination of the case law discloses that this fact situation might be handled in a number of ways; (although the facts in the cases cited below are not in point the rule appears) *i.e.,* (1) claimant was not available for work,[5] or (2) claimant has failed to show good cause for refusing to accept work.[6] Or, if claimant bases his refusal on grounds that nightwork is injurious to his health, it might be treated as being (3) unsuitable work,[7] or (4) good cause to refuse work.[8]

We recognize that to define the term "good cause" is difficult. However, it is clear from the wording of the statute that the terms "available for work," "suitable work," and "good cause" are limited to specific areas. We construe "good cause" as used in § 268.09, subd. 1(5), to mean: (a) Where an employee who is "available for work," is offered "suitable work" which he refuses to accept for reasons which are of a *temporary* and *emergency* character, such

---

[5]See, Ford Motor Co. v. Unemployment Comp. Comm. 316 Mich. 468, 25 N. W. (2d) 586.

[6]See, Claim of Stadler, 278 App. Div. 719, 103 N. Y. S. (2d) 213.

[7]See, Fannon v. Federal Cartridge Corp. 219 Minn. 306, 18 N. W. (2d) 249, 158 A. L. R. 389.

[8]See, Forrest Park Sanitarium v. Miller, 233 Iowa 1341, 11 N. W. (2d) 582.

refusal constitutes "good cause." This means that it must be a necessitous circumstance and must be of such a temporary nature as not to detach him from the labor market. Or (b) where an employee, who is "available for work" is offered "suitable work" but refuses a particular job for justifiable reasons pertaining to *that particular* job such refusal constitutes "good cause."[9] The construction which we have placed upon the terms "available for work," "suitable work," and "good cause" is in conformance with the cardinal rule of statutory construction that when possible a statute must be so construed as to give effect to all of its provisions.[10] It cannot be said that personal factors are to be excluded in determining "good cause" as the statute does not require such construction.[11]

While the relator here was not available for work because, through her refusal to accept the offered employment, she became detached from the labor market and was, therefore, not eligible for unemployment benefits on that ground, it is proper to state that had she been eligible for benefits she would have been disqualified from receiving such benefits because she failed to show "good cause" for refusing employment within the meaning of the statute, § 268.09, subd. 1(5), as we have defined it.

Relator has cited several Pennsylvania cases which she urges us to follow in construing the term "good cause."[12] We have con-

[9]For decisions which we consider to apply the term "good cause" properly, see Benefit Series Service Unemployment Insurance, 1952, SW-170.05-5; *Id.* 1952, SW-265.25-3; *Id.* 1953, SW-265.45-5; *Id.* 1951, SW-360-1; Unemployment Comp. Interpretation Service, Benefit Series, Vol. 9, Nos. 4-5, p. 49.

[10]Schaeffer v. Newberry, 235 Minn. 282, 50 N. W. (2d) 477; Gale v. Comm. of Taxation, 228 Minn. 345, 37 N. W. (2d) 711; Paul v. Faricy, 228 Minn. 264, 37 N. W. (2d) 427; Cohen v. Gould, 177 Minn. 398, 225 N. W. 435.

[11]This discussion concerning "good cause" is limited to the term as it appears in § 268.09, subd. 1(5).

[12]Barclay White Co. v. Unemployment Comp. Board, 356 Pa. 43, 50 A. (2d) 336; Sturdevant Unemployment Comp. Case, 158 Pa. Super. 548, 45 A. (2d) 898; Mooney Unemployment Comp. Case, 162 Pa. Super. 183, 56 A. (2d) 386.

sidered these cases carefully. They are partially in harmony with the decision which we have reached here. In view of the approach which we have taken toward the entire problem presented, it becomes unnecessary to discuss them; nor is it necessary to discuss the other matters presented in the briefs of the parties.

Writ discharged and decision of the division of employment and security affirmed.