# HARRY A. JOHNSON v. MORRIS G. LEVY, SR., AND OTHERS. VICTOR CHRISTGAU, COMMISSIONER, DEPARTMENT OF EMPLOYMENT SECURITY, RESPONDENT.[1]

December 18, 1953.

No. 36,127.

*Harry A. Johnson,* pro se.

*J. A. A. Burnquist,* Attorney General, and *K. D. Stalland,* Assistant Attorney General, for respondent Victor Christgau.

KNUTSON, JUSTICE.

Certiorari to the division of employment and security to review a decision of the director disqualifying relator for benefits.

Relator appears in his own behalf. There are many defects in procedure in presenting this appeal which ordinarily would be fatal to the appeal here, but inasmuch as the director[2] has not

---

[1]Reported in 61 N. W. (2d) 845.

[2]Since this case was heard in the administrative agency the legislature has amended the statute by L. 1953, c. 603, creating a new department of employment security headed by a commissioner in lieu of a division of employment and security headed by a director.

chosen to raise such defects, we will determine the case on its merits.

Relator, aged 46 years at the time of trial, was employed by the Dyckman Hotel on December 5, 1952, as a porter and houseman. His hours of employment were from 8 a. m. to 4 p. m. He continued to work on that schedule until December 23, 1952, when the employer sought to change his hours to 9 a. m. to 5 p. m. Relator thereupon quit his job. On December 30, 1952, he filed his claim for unemployment benefits. The department made a determination that such claim was a valid claim.[3] The employer filed a written protest claiming that relator should be disqualified for the reason that he had voluntarily quit his employment "without good cause attributable to the employer." The matter was thereafter heard, as required by our statutes, and the final determination made by the director sustaining the claim of the employer. The matter is here on certiorari to review such determination.

Relator claims that he quit his job because, when the hours of employment were changed, it left him only one-half hour between the final hour of employment and the beginning of his classes at West High School where he was pursuing a high school course. He also gave other reasons; such as, that he felt the employer should have consulted him before changing the hours of employment.

We are here concerned with M. S. A. 268.09, subd. 1(1), which reads:

"An individual shall be disqualified for benefits:

"(1) If such individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer or was discharged for misconduct connected with his work or for misconduct which interferes with and adversely affects his employment, if so found by the director, for not less than three nor

---

[3]"Valid claim" defined. M. S. A. 268.04, subd. 24. A determination of validity of a claim is merely a determination that the claimant has filed a claim as of a given date, registered for employment and has sufficient wage credits in his "base period" to entitle him to benefits for a given number of weeks in his benefit year if he can prove his "eligibility" for each of such weeks.

more than seven weeks of unemployment in addition to and following the waiting period.

"This provision shall not apply to any individual who left his employment to accept work in an industry, occupation or activity in accordance with War Manpower policies of the United States or to accept work offering substantially better conditions of work or substantially higher wages or both, or whose separation from such employment was due to serious illness of such individual."

We recently had occasion to consider a somewhat similar situation under the disqualification provided by § 268.09, subd. 1(5), in Swanson v. Minneapolis-Honeywell Regulator Co. 240 Minn. 449, 61 N. W. (2d) 526. There we dealt with the term "good cause" as it is related to refusal to accept suitable work after an employee is laid off or discharged by the employer. Here we are dealing with a somewhat different subject in that the unemployment is due to the voluntary quitting of a job by the employee. In order that an employee may not be disqualified under the provisions of our statute now before us, it must be determined that he voluntarily quit his job for "good cause *attributable to the employer.*" (Italics supplied.) We do not find it necessary or advisable to determine what is or is not "good cause attributable to the employer" upon the meager record and briefs now before us. It is sufficient to state here that the findings of the appeal tribunal, which have been affirmed by the director, that "claimant voluntarily and without good cause attributable to the employer discontinued his employment" are reasonably and amply sustained by the evidence.

Affirmed.