**Linda K. LARSON, Respondent,**

v.

**PELICAN LAKE NURSING HOME, Relator,**

**Commissioner of Economic Security, Respondent.**

**No. C5–84–598.**

Court of Appeals of Minnesota.

Aug. 14, 1984.

Dennis W. Hagstrom, Fergus Falls, for respondent Larson.

Jeff David Bagniefski, Fergus Falls, for relator Pelican Lake Nursing Home.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent Com'n of Economic Security.

Considered and decided by HUSPENI, P.J., and NIERENGARTEN, and RANDALL, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Relator employer Pelican Lake Nursing Home, Inc. appeals on a writ of certiorari from a decision of the Commissioner of Economic Security. The Commissioner ruled that respondent employee Linda Larson was involuntarily separated from her employment for reasons other than misconduct and therefore, was not disqualified

from receiving unemployment compensation benefits pursuant to Minn.Stat. § 268.-09, subd. 1(1) (Supp.1983). We affirm.

## FACTS

Larson was employed by Pelican Lake Nursing Home, Inc. for 4 years as a nursing assistant on the afternoon shift from 2:30 through 11:00 p.m. Larson went on maternity leave and, when she was ready to return, was advised there was no position available for the afternoon shift. Upon being informed that Larson filed a claim for unemployment compensation benefits, Pelican advised Larson she could work on an on-call basis until a new schedule was posted. Larson indicated an unwillingness to work on an on-call basis. Pelican then stated she would be on a new work schedule with hours on either the day or night shifts.

Larson filed a claim for unemployment compensation benefits, and a claims deputy determined she was not disqualified. A department referee reversed, concluding Larson voluntarily discontinued her employment without good cause attributable to the employer. The decision of the referee was reversed by a Designated Review Officer who ruled Larson was involuntarily separated from her employment for reasons other than misconduct. A representative of the Commissioner affirmed.

## ISSUE

Whether the record supports the decision of the Commissioner of Economic Security that Larson was involuntarily separated from her employment for reasons other than misconduct and, therefore, was not disqualified from receiving unemployment benefits.

## ANALYSIS

█ The question of whether an employee has been voluntarily or involuntarily terminated is a question of fact. The findings of the Commissioner are reviewed in the light most favorable to the decision and will not be disturbed if there is evidence

reasonably tending to support it. *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 296 (Minn.Ct.App.1983).

█ The issue centers around the question of whether Pelican had made a suitable offer of reemployment to Larson following her return from a maternity leave of absence. Pelican contends Larson was only interested in working the afternoon shift, whereas it was not required to provide the same hours, citing *Johnson v. Levy*, 240 Minn. 502, 61 N.W.2d 845 (1953). Pelican also asserts that Larson's reluctance to work certain hours had been expressed in such terms that a re-employment offer for other than the afternoon shift would háve been a "charade", thus qualifying for a *Kabes v. Middleton*, 324 N.W.2d 187 (Minn.1982) defense. In *Kabes*, the Minnesota Supreme Court held that the offer of jobs to employees who have clearly refused to work would be a "charade" and affirmed the Commissioner's decision that an employer was not required to apprise each individual employee on strike of the availability of work. *Id.* at 189–90.

The Commissioner found that Larson was, in fact, never offered any definite hours on the day or night shifts and, therefore, Larson was never actually given an opportunity to expressly accept or reject such hours.

The record supports the Commissioner's decision. There is ample evidence that Larson was never specifically told she would be placed on a definite work schedule that Larson should either accept or reject. There is evidence that Larson was reluctant to work any hours other than the afternoon shift but there was no evidence from which to conclude that she had unequivocally refused to work any other hours.

### DECISION

The Commissioner's decision qualifying respondent for receiving unemployment compensation benefits is affirmed.