**Arden DAHL, Respondent,**

v.

**DEL DEE FOODS, INC., Relator,**

**Department of Economic Security, Respondent.**

**No. C1–85–1659.**

Court of Appeals of Minnesota.

Dec. 24, 1985.

Arden Dahl, pro se.

John W. Riches, II, Appleton, for relator.

Hubert H. Humphrey, III, Minn. Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

### OPINION

POPOVICH, Chief Judge.

Del Dee Foods, Inc. appeals a determination respondent Arden Dahl did not voluntarily quit, but was discharged. We affirm.

### FACTS

Arden Dahl was employed as a plant manager for relator Del Dee Foods, Inc. from August 1982 to September 1984. On September 20, 1984 Del Droogsma, president of Del Dee, met with Dahl and Mike Lind, the other plant manager. The actual

conversation which took place at the meeting is controverted. Dahl claims he was asked to quit, but Del Dee claims the purpose was to demote Dahl from a management position to a dryer/operator one.

Following the meeting, Dahl believed he had been fired and applied for unemployment compensation. A claims deputy denied him benefits, determining he had voluntarily quit his employment with Del Dee. A referee agreed, finding Dahl was asked to resign from his position and was asked if he would be willing to continue on as an employee in a dryer/operator position. The referee found Dahl responded he would not be interested and, instead, agreed to resign at that time.

The referee concluded because Dahl chose to resign, rather than accept the dryer/operator position, he voluntarily quit his position and was not entitled to unemployment compensation benefits.

Dahl appealed, and a Commissioner's representative reversed, finding Del Dee had given Dahl the choice of either resigning or being discharged, and there was no evidence of an express offer to Dahl of other employment. The Commissioner's representative concluded Dahl was involuntarily separated for reasons other than misconduct.

### ISSUE

Does the record support the Commissioner's determination Dahl was offered the opportunity to either resign or be discharged and was not also offered an alternative position?

### ANALYSIS

1. An employee is disqualified from receiving unemployment compensation benefits if he "voluntarily and without good cause attributable to the employer discontinued his employment with such employer." Minn.Stat. § 268.09, subd. 1(1) (1984). An employer has the burden of proving an employee voluntarily terminated his employment. *Marz v. Department of Employment Services*, 256 N.W.2d 287, 289

(Minn.1977). Whether an employee has voluntarily discontinued his employment or has been discharged is a question of fact for the Commissioner's representative. *Hollar v. Richard Manufacturing Co.*, 346 N.W.2d 692, 694 (Minn.Ct.App.1984). The Commissioner's factual findings should not be disturbed if there is evidence in the record which reasonably sustains those findings. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). Determinations involving the credibility of witnesses lie particularly within the province of the Commissioner, whose decision may not be questioned by this court. *LaSalle Cartage Co., Inc. v. Hampton*, 362 N.W.2d 337, 341 (Minn.Ct.App.1985).

2. The testimony presented by the parties was conflicting. However, there is evidence in the record to support the Commissioner's finding Dahl was not specifically offered an alternate position with Del Dee. We have indicated an offer of alternate employment must be express. In *Larson v. Pelican Lake Nursing Home*, 353 N.W.2d 647 (Minn.Ct.App.1984), the issue involved whether an employee had been offered suitable reemployment following her return from maternity leave. We stated:

> The Commissioner found that Larson was, in fact, never offered any definite hours on the day or night shifts and, therefore, Larson was never actually given an opportunity to *expressly* accept or reject such hours.

> The record supports the Commissioner's decision. There is ample evidence that Larson was never specifically told she would be placed on a definite work schedule that Larson should either accept or reject. *There is evidence that Larson was reluctant to work any hours other than the afternoon shift but there was no evidence from which to conclude that she had unequivocally refused to work any other hours.*

*Id.* at 649 (emphasis supplied). Although there was evidence Dahl would not have liked to have been demoted to a dryer/operator position, neither Droogsma nor Lind

could testify Dahl was actually offered the opportunity to accept or reject the alternate position.

There is also evidence in the record to support the Commissioner's determination Dahl was asked to choose between resigning or being discharged. Lind stated:

> Arden was told that in the best interests of all people involved, himself and us, that it would be best that he quit his employ with Del Dee Foods.

Dahl testified as follows:

> [Droogsma] said that to avoid any kind of a embarrassment to you or to anybody, he says, can I just tell the men, there was a meeting scheduled for the afternoon, he says can I tell the men that you quit.

We note in *Midland Electric, Inc. v. Johnson*, 372 N.W.2d 810 (Minn.Ct.App. 1985) we held:

> [A]n employee's failure to return to work due to a *reasonable belief* that he has been discharged does not constitute a voluntary termination.

*Id.* at 812 (emphasis supplied). Even if Droogsma did not expressly tell Dahl he should quit to avoid being discharged, the record would support a finding Dahl could have reasonably believed he had been discharged.

### DECISION

The record supports the Commissioner's decision Dahl was asked to resign or be discharged, and was not offered the opportunity to accept a demotion.

Affirmed.