**Diane M. McCOURTNEY, Relator,**

v.

**IMPRIMIS TECHNOLOGY, INC.,
Commissioner of Jobs and
Training, Respondents.**

**No. C6–90–2000.**

Court of Appeals of Minnesota.

March 12, 1991.

722

Lawrence E. Meuwissen, Martha A. Ballou, St. Paul, for relator.

James F. Baldwin, David C. Anastasi, St. Paul, Hubert H. Humphrey, III, Atty. Gen., Steven B. Liss, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by KALITOWSKI, P.J., and SHORT and POPOVICH *, JJ.

## OPINION

KALITOWSKI, Judge.

Relator Diane McCourtney seeks review of a decision by the Commissioner of Jobs

---

* Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

and Training which denied her claim for unemployment compensation benefits. McCourtney argues her persistent absences due to a sick baby did not constitute disqualifying misconduct. McCourtney also challenges the Commissioner's decision on equal protection grounds. Respondent employer Imprimis Technology, Inc. has moved to strike portions of McCourtney's brief. We grant the motion to strike, but decline to impose sanctions. We reverse the Commissioner's decision denying benefits.

## FACTS

McCourtney was employed by Imprimis as a full-time accounts payable clerk for over 10½ years. McCourtney's ending salary was $1,360 per month. Her scheduled hours were 6:30 a.m. to 3:00 p.m. Monday through Friday. McCourtney was an excellent employee, and until January 1990 she had no attendance problems.

On September 30, 1989, McCourtney gave birth to an infant who suffered from numerous illnesses. The baby's father and other members of McCourtney's family were unable to assist her with child care.

Due to her baby's illnesses, McCourtney was frequently absent from work between January and May 1990. She was absent 71% of the time between January 1 and February 25; 36% of the time between February 25 and March 11; 31% of the time between March 12 and March 25; and 13% of the time between March 26 and April 8. Between April 9 and April 12 she was absent for four straight days, and during that same two-week pay period, she missed another eight hours. When she missed 10½ hours of work the following week, she was suspended pending termination. Imprimis issued McCourtney two written warnings before finally discharging her for excessive absenteeism.

McCourtney does not challenge her employer's right to terminate her due to absenteeism. McCourtney applied for unemployment compensation benefits, but the Department of Jobs and Training denied her claim. McCourtney appealed to a De-

partment referee, who conducted a hearing.

The evidence at the hearing demonstrated 99.9% of McCourtney's absences were due to her sick baby. Although each of McCourtney's absences was excused, Imprimis issued a written warning in February requiring McCourtney to develop a written plan to solve her child care problem.

In response to this warning, McCourtney prepared a memo to her manager, discussing two possible options for care of her baby when she was unable to take him to her regular baby sitter: (1) professional in-home care; and (2) back-up day care facilities. McCourtney agreed to determine what services were available in her community.

McCourtney looked through the yellow pages, contacted Hennepin County, and called family members. She investigated the possibility of hiring a nanny, but could not afford the cost.

McCourtney contacted ten local child care facilities, and discovered that "Tender Care" was the only provider which would care for sick infants on short notice. However, Tender Care could not guarantee a caregiver would always be available, and would not allow McCourtney to interview a caregiver before he or she entered her home. Other problems with Tender Care services included the cost and the caregiver's inflexible starting time.

Following the hearing, the referee concluded McCourtney was discharged for misconduct because she had some control over her absences and her conduct constituted a violation of behavior which Imprimis had a right to expect of its employees. McCourtney appealed, and the Commissioner's representative affirmed the referee's decision. McCourtney filed this writ of certiorari, seeking review of the decision of the Commissioner's representative.

## ISSUE

Do McCourtney's frequent absences constitute misconduct disqualifying her from

receiving unemployment compensation benefits?

## ANALYSIS

An individual who is discharged for misconduct is disqualified from receiving unemployment compensation benefits. Minn. Stat. § 268.09, subd. 1(b) (Supp.1989). The Minnesota Supreme Court has adopted the following definition of "misconduct":

> The intended meaning of the term 'misconduct' is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed misconduct.

*In Re Claim of Tilseth*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (citation omitted). In *Feia v. St. Cloud State College*, 309 Minn. 564, 244 N.W.2d 635 (1976), the court summarized the *Tilseth* definition of misconduct as "conduct evincing a willful or wanton disregard for the employer's interests or conduct demonstrating a lack of concern by the employee for her job." *Id.* 244 N.W.2d at 636.

An employer has the burden of proving by the greater weight of the evidence that an employee was discharged for disqualifying misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973). On appeal, our review of the Commissioner's decision involves mixed questions of fact and law. *See Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn. 1984). The Commissioner's factual findings should not be overturned unless the evidence in the record does not reasonably tend to support those findings. *See White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). The Commissioner's legal conclusions, however, do not deserve similar deference; this court is "free to exercise its independent judgment." *Talberg v. Commissioner of Economic Security*, 370 N.W.2d 686, 688 (Minn.App.1985) (citing *Smith v. Employers Overload Co.*, 314 N.W.2d 220, 222 (Minn.1981); *Helmin v. Griswold Ribbon & Typewriter*, 345 N.W.2d 257 (Minn.App. 1984)).

The unemployment compensation statutes are "humanitarian in nature and are liberally construed." *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 296 (Minn.App.1983) (citing *Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384 (Minn.1980)). The intent of the unemployment compensation statutes is to assist those who are unemployed "through no fault of their own." Minn.Stat. § 268.03 (1988). The issue is not whether an employer was justified in discharging an employee, but rather, whether the employee committed "misconduct" disqualifying the employee from receiving benefits. *See Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn.1984).

Each of McCourtney's absences was excused and was due to circumstances beyond her control. *Cf. Winkler v. Park Refuse Service, Inc.*, 361 N.W.2d 120, 124 (Minn.App.1985) ("Absence from work under circumstances *within the control of the employee* has been determined to be misconduct sufficient to deny benefits. * * * The critical factor is whether the employee's behavior caused his failure to report to work.") (emphasis added). McCourtney made substantial efforts to find care for her child so she could work. Respondents argue McCourtney could have utilized the services of Tender Care. We disagree. The hours offered by Tender Care personnel were incompatible with McCourtney's work schedule.

In light of McCourtney's good faith efforts, her inability to find care for her child

is not "misconduct" within the meaning of Minn.Stat. § 268.09, subd. 1(b). McCourtney's actions were motivated by a willful regard for her child's interests and not a wanton disregard of her employer's interest or lack of concern for her job.

We recognize that in some circumstances misconduct may be demonstrated by excessive absenteeism alone. *See Jones v. Rosemount, Inc.,* 361 N.W.2d 118 (Minn.App.1985); *McLean v. Plastics, Inc.,* 378 N.W.2d 104 (Minn.App.1985). Where the circumstances do not overwhelmingly demonstrate that an employee's absences are deliberate, willful, or equally culpable, we may also examine the employee's history, conduct, and underlying attitude. While McCourtney's absences were undeniably excessive, her work history and good faith attempts to find care for her child weigh against a determination that her absences demonstrated the culpability required by *Tilseth.*

We conclude that under the specific facts and circumstances of this case, Imprimis has failed to meet its burden of proving McCourtney's actions constitute misconduct as intended by the legislature and further defined by *Tilseth.* Therefore, McCourtney is entitled to unemployment compensation benefits. The economic burden this conclusion places on the employer is a necessary cost of the legislature's humanitarian concern for the welfare of persons unemployed through no fault of their own.

In light of our decision, we decline to address appellant's constitutional arguments. We grant Imprimis' motion to strike the evidence in McCourtney's brief which was not submitted to the referee or Commissioner's representative below, but we decline to impose sanctions.

## DECISION

McCourtney's inability to obtain child care for her sick infant resulting in frequent absences from work is not "misconduct" under Minn.Stat. § 268.09, subd. 1(b). Therefore, the Commissioner's decision is reversed. We grant Imprimis' motion to strike all references to extra-record evidence.

Reversed.

POPOVICH, Judge (dissenting).

I respectfully dissent and would affirm the decision of the Commissioner's representative for the following reasons:

1. As the majority recognizes, Diane McCourtney's absences were frequent and excessive. She received two warnings yet her absences continued. We have previously said that excessive absenteeism alone may demonstrate misconduct. *See, e.g., Jones v. Rosemount, Inc.,* 361 N.W.2d 118, 120 (Minn.App.1985); *McLean v. Plastics, Inc.,* 378 N.W.2d 104, 107 (Minn.App.1985). I believe McCourtney's frequent absences evidenced a "disregard of standards of behavior which an employer has a right to expect of its employees." *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374, 204 N.W.2d 644, 646 (1973).

2. Under the majority's analysis, an employer becomes the victim of an employee's personal problems with obtaining child care. An employer is forced to (1) put up with the employee's extensive absences or (2) pay for the resulting unemployment at potentially great expense. I do not believe it was the legislature's intent to force employers into this catch 22 position. Rather, as respondents point out, other social welfare programs have been developed to handle the child care issue.

3. Although we must be careful to liberally construe the unemployment statutes in favor of awarding benefits, in my opinion the majority decision goes beyond the "outer limits of eligibility." *See McGowan v. Executive Express Transportation Enterprises, Inc.,* 420 N.W.2d 592, 595 (Minn. 1988). Such expansion of the definition of misconduct is, I believe, for the supreme court or the legislature to decide.