**David L. PRICKETT, Relator,**

v.

**CIRCUIT SCIENCE, INC., Respondent,**

**Commissioner of Jobs and Training, Respondent.**

**No. CX–92–1985.**

Court of Appeals of Minnesota.

May 4, 1993.

Review Granted June 28, 1993.

Tim C. Theisen, Anoka, for relator.

Kent E. Todd, St. Paul, for respondent.

Considered and decided by LANSING, P.J., and HARTEN and FOLEY *, JJ.

## OPINION

LANSING, Judge.

This appeal by writ of certiorari challenges the denial of unemployment compensation benefits for failure to report for a new shift assignment because of inability to obtain care for a dependent child. We reverse.

## FACTS

Circuit Science, Inc. (employer) discharged David Prickett from his job as

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn.

maintenance mechanic on April 29, 1992. Prickett had been hired in October 1990 to work the 6:50 a.m. to 3:20 p.m. shift. As the least senior employee on that shift, the union contract provided that he would be the first to be reassigned if another shift required additional workers. In April 1992 he received three days' notice that he would be temporarily reassigned to the 3:20 p.m. to 11:30 p.m. shift.

Upon notification Prickett began seeking child care for his three-year-old son. His neighbor who had been providing child care could not accommodate the change in hours. After an extensive search, Prickett found no child-care center that would provide care between 6 p.m. and 6 a.m. Neither Prickett's ex-spouse nor family members were able to assist.

Prickett reported that he was unable to find child care, and the employer attempted to assist him by arranging for child care with coworkers. Although one coworker agreed to provide child care, his spouse would not agree. On April 29 the employer discharged Prickett for failure to report to work. Prickett's claim for unemployment compensation benefits was ultimately denied by the Commissioner's representative. The representative concluded that it was misconduct not to report for regularly scheduled work.

## ISSUE

Does failure to report for a new shift assignment because of inability to arrange care for a dependent child constitute misconduct for purposes of unemployment compensation?

## ANALYSIS

Minnesota courts have not directly addressed the issue of whether failure to report for a new shift assignment because of inability to obtain child care is misconduct justifying denial of unemployment compensation. Our courts have addressed, however, related issues in three cases in-

Const. art. VI, § 10.

volving child-care problems in the context of unemployment benefits.

The first two cases deal with the issue of posttermination availability for reemployment, which is a requirement for continued eligibility to receive benefits. In *Swanson v. Minneapolis–Honeywell Regulator Co.,* 240 Minn. 449, 458, 61 N.W.2d 526, 532 (1953), the supreme court held that refusal to accept an offer of reemployment, because of inability to obtain child care for a 7:00 or 7:30 a.m. shift, disqualified the claimant from continuing to receive benefits.

Following the rationale of *Swanson,* the court in a subsequent case disqualified a claimant from receiving benefits when she refused reemployment on a different shift. *See Thompson v. Schraiber,* 253 Minn. 46, 48, 90 N.W.2d 915, 916 (1958). The claimant stated that she did not want to leave her minor children alone, and it was financially impractical to hire a sitter. *Id.* at 47, 90 N.W.2d at 916.

More recently this court addressed the issue of whether a parent's frequent absences to care for a sick child constitutes disqualifying misconduct. In *McCourtney v. Imprimis Tech., Inc.,* 465 N.W.2d 721 (Minn.App.1991), an employee was discharged for repeated absences caused by a child's frequent illnesses. *Id.* at 723. This court held that inability to find child care for the employee's child was not misconduct because the claimant made a good-faith effort to obtain child care. *Id.* at 724–25.

The *McCourtney* analysis is consistent with an emergent majority rule against disqualification when a claimant quits or is discharged from employment for inability to arrange child care during working hours. *See generally* George L. Blum, Annotation, *Unemployment Compensation: Eligibility as Affected by Claimant's Refusal to Work at Particular Times or on Particular Shifts for Domestic or Family Reasons,* 2 A.L.R. 5th 475 (1992). Although the jurisdictions treat the issue on a case-by-case basis, most modern courts have held that claimants are eligible for unemployment compensation when a termination results from an inability to secure child care. *See* Blum, *supra* (demonstrating the distinct trend of recent cases toward recognizing unemployment claims that emanate from unavailability of child care).

■■■ The misconduct disqualification of Minn.Stat. § 268.09, subd. 1(b) (1990) requires "conduct evincing a willful or wanton disregard for the employer's interests or conduct demonstrating a lack of concern by the employee for her job." *Feia v. St. Cloud State College,* 309 Minn. 564, 565, 244 N.W.2d 635, 636 (1976). The disqualification provisions of the statute must be narrowly construed. *Smith v. Employers' Overload Co.,* 314 N.W.2d 220, 222 (Minn. 1981). When the facts are undisputed, the determination of misconduct is a question of law subject to independent determination on appeal. *Ress v. Abbott–Northwestern Hosp., Inc.,* 448 N.W.2d 519, 523 (Minn.1989).

We analyze the Commissioner's decision as an issue of law. Although the Commissioner's representative relied, in part, on Prickett's failure to inform the employer that the coworkers were unable to provide child care, it is undisputed that Prickett was discharged for failure to report for work and that he failed to report to work because he was unable to arrange for child care. The Commissioner's representative did not reject Prickett's testimony of good-faith efforts to find child care and acknowledged that child-care centers are not available during evening hours. On these facts there is no misconduct that would justify disqualification.

*Swanson* and *Thompson* provide minimal support for a legal conclusion that Prickett's actions constitute misconduct. Neither case is directly on point because they address the postseparation employment issue of availability for work. *Swanson,* 240 Minn. at 452–53, 61 N.W.2d at 529; *Thompson,* 253 Minn. at 48, 90 N.W.2d at 916. *Swanson* specifically limits its holding to "good cause" determinations when offered available, suitable work. *Swanson,* 240 Minn. at 458 n. 11, 61 N.W.2d at 532 n. 10 (citing Minn.Stat. § 268.09, subd.

1(5) (1949), now codified at Minn.Stat. § 268.09, subd. 2 (1992)).

Any persuasive strength obtained by analogy from these two cases has been substantially eroded by time. When *Swanson* was decided forty years ago, the rule it adopted was the rule in all jurisdictions. *Thompson*, 253 Minn. at 48, 90 N.W.2d at 916. This rule is now the minority rule throughout the United States and is ill suited to modern child-care realities. *See In re Gardner's Trust*, 266 Minn. 127, 134, 123 N.W.2d 69, 74 (1963) (doctrine of stare decisis does not require adherence to decisions that are unworkable because of social and economic changes).

Given Prickett's situation, his inability to transfer to the new shift does not evince a willful or wanton disregard for the employer's interest, nor does it demonstrate he had a lack of concern for his job. *See Feia*, 309 Minn. at 565, 244 N.W.2d at 636; *Truitt v. Unemployment Comp. Bd. of Review*, 527 Pa. 138, 589 A.2d 208, 209–10 (1991) (single parent quit job for good cause when she lost babysitter and was unable to obtain child care after 6:00 p.m.); *Newland v. Job Service North Dakota*, 460 N.W.2d 118, 124 (N.D.1990) (claimant quit job with good cause attributable to employer if, in fact, no child care was available after 7:00 p.m.).

## DECISION

Failure to report for a new shift assignment because of inability to obtain care for a dependent child is not misconduct if the employee makes a good-faith effort to obtain child care.

**Reversed and remanded.**