KING, P.J.,
dissenting.
¶ 20. I find myself forced to dissent to the majority opinion herein. The majority appears to have confused the issues of whether there existed an adequate basis to dismiss McNeil, and whether his actions constituted misconduct, such as would preclude his receipt of unemployment compensation benefits. There can be no doubt that Taber had grounds for the dismissal of McNeil. However, McNeil’s actions were not misconduct so as to deny him unemployment compensation benefits.
¶ 21. The majority holds that, as a matter of law, McNeil had engaged in misconduct and was therefore not entitled to unemployment compensation. The majority ascribes as misconduct McNeil’s being absent or tardy for work several times within a period of twelve months.
*228 ¶ 22. Taber had a policy which assigned a specific number of penalty points to an employee each time he was tardy or missed work. These points were assigned without regard to the reason for the tardiness or absence. If an employee accumulated twelve points within twelve months, he was dismissed. McNeil received his twelfth penalty point when he was tardy for work on December 4, 2001. Because penalty points were assigned without regard to fault, McNeil was dismissed after having received his twelfth penalty point on December 4, 2001.
¶ 23. Following his dismissal, McNeil sought unemployment compensation benefits. In its statement to the MESC, Taber claimed that McNeil had been dismissed for misconduct, and therefore was not entitled to unemployment benefits.
¶ 24. After a hearing, the appeals referee issued a decision which denied unemployment compensation to McNeil. The relevant portion of that decision is as follows:
Findings of Fact
The claimant was employed with Ta-ber Extrusions, Gulfport, Mississippi, for approximately one year and five months as an Operator B, ending on December 5, 2001, when he was discharged for exceeding the employer’s absentee points. At the time the claimant was separated, the employer had a written policy indicating that any accumulation of points in excess of twelve would lead to discharge. Also, the policy included a progressive disciplinary process. Prior to his separation, the claimant was administered three written warnings for attendance points, including two suspensions. At the time of each warning, the claimant was given a print-out of his point totals and was placed under advisement of what the following action would be if‘points continued to accrue. The employer’s policy also includes a roll-over stipulation. Any time a point ages one year, it drops off. The claimant’s points accumulated as follows: five absences totaling one point apiece; three no call absences totaling two points apiece; and one tardy whereby the claimant missed more than one-half of his scheduled work time, which added 1.5 points. The total reached 12.5 at the time the claimant was tardy on December 4, 2001. The claimant was late for work because he had been incarcerated earlier that morning. The claimant was scheduled to start work at 3:00 PM but he did not arrive until 7:00 PM. The claimant did not call to explain his situation to the employer. Consequently, the claimant was discharged on December 5, 2001.
Opinion
Section 71-5-513 A(l)(b) of the Law provides that an individual shall be disqualified for benefits for the week or fraction thereof which immediately follows the day on which he was discharged for misconduct connected with the work, if so found by the Commission, and for each week thereafter until he has earned remuneration for personal services equal to not less than eight (8) times his weekly benefit amount as determined in each case.
In the Mississippi Supreme Court, in the case of Wheeler v. Arriola, 408 So.2d 1381 (Miss.1982), the Court held that:
“The meaning of the term ‘misconduct’, as used in the unemployment compensation statute, was conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of the standards of behavior which the employer has the right to expect from his employees. Also, carelessness and negligence *229 of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered ‘misconduct’ within the meaning of the statute.”
An employee shall not be found guilty of misconduct for the violation of a rule unless: (1) the employee knew or should have known of the rule; (2) the rule was lawful and reasonably related to the job environment and job performance; and (3) the rule is fairly and consistently enforced. (MESC Administrative Manual Part V, Paragraph 1720).
The facts in this case show that the claimant was discharged for attendance. The evidence presented by the employer substantiates a finding that the claimant was made aware of policies and procedures, and was given opportunities to improve his behavior before he was discharged. An employer has the right to expect that an employee be at work, on time, and to give adequate notification if they are to be absent. The fact that the claimant failed to adhere to the employer’s policies shows a willful violation of the standard of behavior that the employer has a right to expect. Consequently, the decision rendered by the claims examiner shall be modified as to the effective date of the disqualification period only.
¶ 25. When the referee made this decision, she did not have the benefit of knowing that McNeil was found not guilty of the charges against him. However, she did have the benefit of McNeil’s testimony that he was a victim of ethnic profiling and had done nothing to cause his arrest.
¶26. McNeil appealed the decision of the referee to the Board of Review. Prior to disposition of this case by the Board of Review, McNeil was found not guilty of the charges against him. This information was then provided to the Board of Review. The Board of Review chose to ignore this information, and adopted verbatim the findings and opinion of the referee, which denied benefits to McNeil.
¶ 27. The Harrison County Circuit Court likewise affirmed the denial of benefits to McNeil.
¶ 28. The majority opinion of this Court now proposes to do the same. The majority reaches that result by finding that McNeil was guilty of misconduct as a matter of law.
¶ 29. The majority uses Barnett v. Mississippi Employment Security Commission, 583 So.2d 193 (Miss.1991) to support its holding that McNeil was guilty of misconduct as a matter of law. Such reliance suggests either the misreading or the misunderstanding of the Barnett decision. While it is true that Barnett says excessive absences may be misconduct, it does not make absenteeism misconduct as a matter of law, nor does it suggest that all absenteeism is misconduct. Instead, Barnett suggests that misconduct is a question of fact to be determined on a case by case basis.
¶30. This is readily seen by even a cursory reading of the following passage from Barnett:
While no Mississippi cases so hold, it simply goes without saying that excessive absenteeism could constitute misconduct. See, e.g., Barragan v. Williams Island, 568 So.2d 106, 107 (Fla.Dist.Ct.App.1990); Tallahassee *230 Hous. Auth. v. Florida Unemployment Appeals Comm’n, 488 So.2d 413, 414 (Fla.Dist.Ct.App.1986). This does not mean that excessive absenteeism would qualify as misconduct in all circumstances. See, e.g., McCourtney v. Imprimis Tech, Inc., 465 N.W.2d 721 (Minn.Ct.App.1991) (frequent absences from work not misconduct when caused by inability to obtain child care for sick infant); Gunderson v. Libbey Glass, 412 So.2d 656, 659 (La.Ct.App.1982) (absences resulted from reason beyond claimant’s control).
Barnett v. Miss. Employment Sec. Comm’n, 583 So.2d 193, 196 (Miss 1991).
¶ 31. When the foregoing passage is considered, it is clear that the majority’s reliance upon Barnett is misplaced.
¶ 32. The definition of misconduct as frequently quoted is:
Conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of the standards of behavior which the employer has the right to expect from his employees. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer ... mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertence and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [are] not considered “misconduct” within the meaning of the statute.
Wheeler v. Arriola 408 So.2d 1381, 1383 (Miss.1982).
¶ 33. The act that led to McNeil’s dismissal was his arrest. The majority has failed to show any conduct on McNeil’s part, resulting in his arrest, which evinces a willful and wanton disregard of his employer’s interest. Likewise, the majority has not identified any act of recurring carelessness or negligence by McNeil which suggests an intentional or substantial disregard for his employer’s interest. McNeil was doing what he was lawfully entitled to do in a manner in which he was lawfully entitled to do it, at a time when he was lawfully entitled to do it, and at a place at which he was lawfully entitled to do it.
¶ 34. Under these circumstances, I find incredible the majority’s holding that McNeil has as a matter of law engaged in misconduct, which justified a denial of unemployment benefits.
¶ 35. While Taber’s no fault policy provided a basis to dismiss McNeil, without some fault-based action, either direct or indirect, by McNeil, it did not provide a base for the denial of unemployment compensation benefits.
¶ 36. For these reasons, I would reverse and render.
IRVING AND MYERS, JJ., JOIN THIS SEPARATE OPINION.