## WILLIE LEWIS v.
## MINNEAPOLIS MOLINE, INC.

181 N. W. (2d) 701.

November 20, 1970—Nos. 42364, 42374.

---

*Hvass, Weisman, King & Allen, Si Weisman,* and *Reed Mac-kenzie,* for employee.

*Faegre & Benson, Dale E. Beihoffer,* and *James M. Samples,* for employer.

Heard before Knutson, C. J., and Rogosheske, Peterson, Kelly, and Chester G. Rosengren, JJ.

CHESTER G. ROSENGREN, JUSTICE.*

Certiorari on the relation of both employer and employee to review a decision of the Minnesota Department of Employment Security (now the Department of Manpower Services).

The employee, Willie Lewis, was employed by the employer manufacturer, Minneapolis Moline, Inc. (hereinafter referred to as Moline), from December 26, 1963, to November 16, 1968. Until August 1965, he was a foundry laborer. In August 1965, he was promoted to assistant pour-off man, earning $3.66 an hour. On July 31, 1968, Lewis applied for and was given permission to take a crane operator's job at a starting salary of $2.65 an hour. On November 16, 1968, Lewis was laid off. At the time he was making $3.08 an hour for a 40-hour week. His last employment with Moline was from December 13, 1968, to January 3, 1969. Moline offered Lewis reemployment as a foundry laborer on March 24, 1969, at $2.86 an hour. He refused the offer.

On April 1, 1969, a claims deputy of the Department of Employment Security issued a determination that Lewis was entitled to unemployment benefits. He specifically found:

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

"* * * Inasmuch as offer of re-employment was for a different job, it cannot be considered that the hourly wages and conditions of work offered were substantially the same or better than previously provided by this employer during the base period; therefore, base period wage credits cannot be considered for cancelling under the statutory provisions of the law."

Upon timely appeal by Moline, an appeal tribunal affirmed the decision of the claims deputy on the ground that Lewis had not been offered suitable reemployment with his previous employer under Minn. St. 268.09, subd. 1(6).

On further appeal to the commissioner, the representative of the commissioner disqualified Lewis from benefits on the ground that he had refused to accept suitable work without good cause within the meaning of Minn. St. 268.09, subd. 1(4).

Certiorari issued from this court on December 30, 1969, pursuant to Minn. St. 268.10, subd. 8, at the instance of Lewis, who contends that the commissioner erred in determining that he had not made a sufficient showing of good cause for rejecting the proffered reemployment under § 268.09, subd. 1(4). Moline disputes this contention.

Certiorari also issued from this court on January 2, 1970, at the instance of Moline, who contends that the commissioner was in error in failing to decide whether Lewis' wage credits should be canceled because he "refused suitable reemployment offered by a base period employer" within the meaning of § 268.09, subd. 1(6). Lewis concedes that this issue was properly before the commissioner and was not decided by him.

Moline further contends that the commissioner's failure to decide whether Lewis was not "available for work" and thus ineligible for benefits under § 268.08, subd. 1(3), was arbitrary, unreasonable, and erroneous as a matter of law. Lewis argues that the record with respect to this issue is too incomplete for any determination thereof.

We affirm the commissioner's determination and further decide as a matter of law that Moline is correct in contending that

Lewis "refused suitable reemployment offered by a base period employer." Although the "availability" issue was argued, we find it unnecessary to render any decision on that ground.

■   Minn. St. 268.09, subd. 1(4), reads in part:

"Subdivision 1.   An individual shall be disqualified for benefits:

\*   \*   \*   \*   \*

"(4)   If the commissioner finds that he has failed, *without good cause,* either to apply for available, suitable work when so directed by the employment office, or the commissioner or to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the commissioner, or to actively seek employment. Such disqualification shall continue for the week in which such refusal or failure occurred and for a period of seven weeks of unemployment immediately following such refusal or failure.

"(a)   In determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience, his length of unemployment and prospects of securing local work in his customary occupation, and the distance of the available work from his residence." (Italics supplied.)

Lewis' contention with respect to § 268.09, subd. 1(4), has two facets. He first argues that this statute requires the commissioner to make separate findings with reference to the "suitability" of work and with reference to whether there is "good cause" for rejecting that job, and that the memorandum accompanying the commissioner's decision indicates that the commissioner made no determination as to whether "good cause" existed.

Lewis adduces no case law in support of his assertion that the commissioner must express some type of "positive" finding indicating in what respects Lewis has failed to show that there existed "good cause" for his refusal to accept offered reemploy-

ment. "Good cause" is a conclusion which flows from findings of fact. Because a "finding" of "no good cause" is conclusory, as a practical matter it would seem to make little difference whether the "findings of fact" contained a statement to the effect that there exists here no "good cause" for refusal of this suitable work or whether this "finding" is explicitly stated in the decision rendered, as here. To require, as Lewis would, that the administrative officer indicate in exactly what respects the party with the burden of showing "good cause" has failed to sustain that burden seems unnecessary. An actual determination supporting the specific conclusion that "claimant refused without good cause to accept suitable work" is necessarily implicit in the commissioner's decision. On the facts in this case, no purpose would be served by referring this proceeding back to the hearing tribunal for specific findings of fact which are not only implicit in the decision rendered but are explicitly stated therein.

The second aspect of Lewis' contention under § 268.09, subd. 1(4), is that the decision thereunder regarding "good cause" is erroneous as a matter of law.

The findings of the commissioner in a proceeding of this nature are viewed in the light most favorable to the decision below and where there is evidence reasonably trending to sustain them, they will not be disturbed. Kantor v. Honeywell, Inc. 286 Minn. 29, 31, 175 N. W. (2d) 188, 190.

In Swanson v. Minneapolis-Honeywell Regulator Co. 240 Minn. 449, 457, 61 N. W. (2d) 526, 532, this court recognized that the terms "good cause," "available for work," and "suitable work" have caused confusion in the courts, with some courts embracing certain facts under one of the requirements and others placing them under a different statutory requirement. To clarify the situation, the court observed that "it is clear from the wording of the statute that the terms 'available for work,' 'suitable work,' and 'good cause' are limited to specific areas." In construing these general terms the court said (240 Minn. 457, 61 N. W. [2d] 532):

"* * * (a) Where an employee who is 'available for work,' is offered 'suitable work' which he refuses to accept for reasons which are of a *temporary* and *emergency* character, such refusal constitutes 'good cause.' This means that it must be a necessitous circumstance and must be of such a temporary nature as not to detach him from the labor market. Or (b) where an employee, who is 'available for work' is offered 'suitable work' but refuses a particular job for justifiable reasons pertaining to *that particular* job such refusal constitutes 'good cause.' The construction which we have placed upon the terms 'available for work,' 'suitable work,' and 'good cause' is in conformance with the cardinal rule of statutory construction that when possible a statute must be so construed as to give effect to all of its provisions. It cannot be said that personal factors are to be excluded in determining 'good cause' as the statute does not require such construction."

The reasons on which Lewis relies to justify his refusal of the Moline job offer do not seem to be "temporary" or "emergency" in nature. Therefore, only if he is justified in his reasons for refusing *this particular job* will he establish "good cause" as a matter of law.

The factors which Lewis claims constitute "good cause" for refusal to accept this particular job offer are (1) no opportunity for advancement; (2) low pay; (3) deplorable working conditions; and (4) hard work.

On this record these contentions are insufficient to establish "good cause" as a matter of law.

As an initial matter, the contentions are not completely supported by the record before us. That Lewis was once able to advance to the position of assistant pour-off man, in which he was earning $3.66 an hour, and to earn the chance to become a crane operator is at least some evidence the job was not the "dead end" he would have us believe. The hourly wage rate in the offered job was only 7 percent less than he had last earned in the crane operator position he had voluntarily taken. The allegedly "de-

plorable working conditions" are precisely those in which it appears Lewis toiled during all but 2 weeks of his employment with Moline, since it appears that with the exception of that period he actually worked in the same area of the same plant while a crane operator as he had in his previous positions as assistant pour-off man and laborer. While there is no ignoring the fact that foundry labor is "hard work," Lewis gives no indication of any particular reason he can justifiably refuse this job on that account.

The legislative expression of public policy embodied in § 268.03 stating, in part, that "unemployment reserves [are] to be used for the benefit of persons unemployed *through no fault of their own*" (italics supplied), has been construed as establishing a "voluntariness" test which asks whether the employee exercised a free-will choice and control in the matter. See, Di Re v. Central Livestock Order Buying Co. 246 Minn. 279, 74 N. W. (2d) 518; Hessler v. American Television & Radio Co. 258 Minn. 541, 104 N. W. (2d) 876. In this case, it appears that Lewis voluntarily refused an offer of "suitable work." Therefore, he appears to be outside the protective scope of the Employment Security Law, which is intended for the benefit of persons beset by involuntary unemployment. As this court stated in Di Re (246 Minn. 289, 74 N. W. [2d] 526):

"The Unemployment Compensation Act was never intended as a guarantee that an employee would always receive benefits unless he was offered employment of precisely the same kind or character as that of his most recent employment. The purpose of the act is to assist those who are unfortunate enough to be involuntarily unemployed, not to benefit those who capriciously refuse similar work for which they are reasonably fitted by past training and experience."

Although Lewis possibily preferred to obtain some other employment, all that is clear from this record is that he refused an offer of "suitable work" without "good cause." Under Minn. St.

268.09, subd. 1(4), this disqualifies him from benefits for the week of refusal and 7 succeeding weeks.

■ Moline criticizes the commissioner's failure to decide whether Lewis is disqualified under § 268.09, subd. 1(6), which provides in part:

"Subdivision 1. An individual shall be disqualified for benefits:

\* \* \* \* \*

"(6) If such individual has, during his benefit year, refused suitable reemployment offered by a base period employer. The wage credits of such individual earned from such base period employer shall be canceled; \* \* \*.

\* \* \* \* \*

"For the purpose of this clause, reemployment offering substantially the same or better hourly wages and conditions of work previously provided to such individual by such base period employer during the base period shall be deemed to be 'suitable reemployment.' "

Should Lewis be disqualified under this provision, he would be unable to collect any unemployment compensation, since it appears that all his wage credits accrued from his base period employment with Moline.

Both parties agree that this issue was properly before the commissioner and that there is no indication that he made a determination of it. The issue is now before us. Neither party requests a remand to the commissioner for further findings of fact, and it does not appear that there is any need for such a remand. Thus, it appears proper for the court to determine this issue on the record before us.

From the legislative declaration of public policy embodied in Minn. St. 268.03 of the Employment Security Act, it is apparent that it was felt that the stability of employer-employee relationships should be encouraged. As a corollary to the maintenance of that relationship, it would follow that a high priority

would be placed upon reinstating that relationship should it be severed for some reason. To this end the legislature placed a "premium" on offers of reemployment by a base period employer by providing that an employee's refusal of such an offer of reemployment cancels the wage credits which were earned with that employer. § 268.09, subd. 1(6). This is usually more harsh to the employee than a stated maximum period of disqualification which results from disqualification under other clauses of § 268.09. Apparently the legislature deemed that § 268.09, subd. 1(6), offers sufficient inducement to base period employers to find "suitable reemployment" for former employees, the inducement here taking the form of an opportunity for employers to take positive steps to delimit the effects of the unemployment of out-of-work former employees whose status as unemployed, if continued, would have detrimental effects on the employer's experience ratio—which partially governs the rate at which an employer must contribute to the unemployment compensation fund. Obviously, the incentive for the employer to offer reemployment is higher if doing so can virtually guarantee that his account will no longer be charged at all then if making a reemployment offer can only have a more limited effect on his experience ratio. Section 268.09, subd. 1(6), offers an incentive to the employer to offer suitable employment to former employees and seeks to assure that former employees will accept such offer upon pain of possible total loss of unemployment benefits. In contrast, unjustified refusal of an offer of "suitable work" from a different employer results only in benefit disqualification for an 8-week period. Although this unique disqualification provision has been the object of criticism on the ground that it imposes a penalty merely on refusal of a certain type of "suitable work"—that offered by a base period employer[1]—it appears the provision should tend to encourage renewal of employer-employee relationships, thereby contribut-

---

[1] See, Note, 54 Minn. L. Rev. 1319, 1333.

ing to "more stable employment" in fulfillment of the declared public policy of the legislature.

The statutory definition of "suitable reemployment" quoted implements the "most favored" status accorded such reemployment offers through a "substantially the same or better" test which compares hourly wages and conditions of work encompassed by the offer with those of the previous work. Thus, the previous employment establishes the standard against which the offer is to be judged. Apparently the reasoning is that if the employee was engaged in work for this employer under identical, or substantially the same or better hourly wages and conditions, such work is presumptively "suitable" for his reemployment. § 268.09, subd. 1(6). This test differs from that under § 268.09, subd. 1(4)(a), in that under subd. 1(4)(a) "prior training" and "experience" are only two of many factors to be considered in determining whether work is "suitable" for an individual. The distinction probably amounts to making a determination of "suitability" for this individual initially under subd. 1(4)(a) with "prior training" and "experience" providing only some evidence, while subd. 1(6) provides that the employee's former work is a standard against which the offer is to be evaluated.

The hourly wage difference between the old and offered jobs was $.22 per hour or approximately 7 percent. An offer of work at 7 percent less hourly appears to be "substantially the same" for purposes of the statute.

Likewise, the record discloses that the working conditions of the crane operator's job and that of the proffered job were substantially, if not totally, the same. The evidence before the commissioner showed that Lewis had spent all but 2 weeks of his employment, including that time during which he was a crane operator, in the foundry under conditions substantially similar to those encountered by any other person working in the foundry.

Under such circumstances it appears that the hourly wage rate and the working conditions of the offered reemployment were

"substantially the same" as those previously provided. Under § 268.09, subd. 1(6), this requires cancellation of the employee's wage credits with that employer.

In light of this determination, the issue of whether Lewis was "available for work" need not be reached by this court except to say that all factors pointed to by Lewis as justification for his refusal of this job offer are apparently directed properly to the issue of "good cause" and not availability for work.

The entire record compels the conclusion that the decision of Lewis not to accept proffered reemployment was voluntary, although possibly induced at least in part by suggestions of his union steward.

Remanded to the Department of Manpower Services with directions to conform its decision to this opinion.