Duane J. PLOWMAN, Employee,

v.

COPELAND, BUHL & CO.,
LTD., Relator,

Commissioner of Department of Employment Services, Respondent.

No. 47150.

Supreme Court of Minnesota.

Nov. 10, 1977.

Mannikko & Swenson, Joseph L. Mannikko and Jeffrey W. Lambert, Wayzata, for relator.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Peter C. Andrews, Asst. Atty. Gen., William G. Brown, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard before SHERAN, C. J., and YETKA and SCOTT, JJ., and considered and decided by the court en banc.

PER CURIAM.

Certiorari to the Minnesota Department of Employment Services (Department). Employer-relator seeks review of the Department's determination that the claimant-employee was not disqualified for unemployment compensation benefits and that relator's experience rating account should be charged. We affirm.

In May 1975, Duane J. Plowman (claimant) was discharged by Copeland, Buhl & Co., Ltd. (relator), a professional accounting corporation. On July 20, 1975, claimant applied for unemployment compensation benefits. On July 29, 1975, relator informed the Department that claimant was terminated for work related reasons, but it felt its experience rating account should not be charged. Claimant informed the Department that he and relator disagreed over the number of hours worked and over compensation. He further informed the Department that he was terminated for lack of work. Relator responded by agreeing with the first two statements but stated that there was no lack of work.

On November 10, 1975, E. Gaarder, a claims deputy, determined that claimant was not separated from his work for proven willful misconduct and that relator's experience rating account was to be charged.[1]

An appellate hearing was held December 29, 1975, before T. B. Miksza, who took testimony from claimant and Dennis W. Buhl, relator's vice president. His determination was essentially the same as Mr. Gaarder's. He specifically found:

"(2) On May 23, 1975 claimant was discharged from employment because the employer was dissatisfied with claimant's time reports and work performance."

On April 6, 1976, relator appealed the decision to the commissioner of employment services, alleging that claimant was guilty of gross misconduct and that additional wrongdoing had been discovered.[2] In a decision dated July 28, 1976, R. E. Kenney, representative of the commissioner, upheld the decision of the appeal tribunal.

The testimony before the appeal tribunal is conflicting. Relator charged that claimant turned in payslips which reflected more time than he actually spent on the job, while claimant denied this.

Claimant was paid an annual base salary of $17,000 and was compensated at an hourly rate of $8.40 for any time in excess of 40 hours per week or 2,080 hours per year. At the end of each month each employee would submit to relator a "payslip" which reflected the total number of compensable hours worked. (Claimant's submitted payslips were not brought to the hearing and thus could not have been introduced into evidence.)

Claimant (and all other employees) also kept daily time records. Claimant testified that the records were for his own purposes and that they did not fully reflect work time which was not billable to specific clients. The timesheet reports were not turned in to relator, but the hours billed to

1. Minn. St. 268.06, subd. 6, makes an employer's contribution to the state unemployment compensation fund depend in part on the benefits paid out by him. Minn. St. 268.06 provides a mechanism by which an employer can protest a determination of his contribution rate. Two levels of appeal are available. Aggrieved employers may get an appellate hearing before a referee and may appeal the referee's determination to the commissioner. The only apparent difference between this provision and Minn. St. 268.10 is that the initial appeal from benefit determination may be before a three-person panel rather than a single referee.

2. A letter from relator to Mr. Miksza is stated in language of an appeal from a benefit determination. It also alleged later discovered acts of misconduct which were apparently not original grounds for the discharge. There was no mention of the disputed documents (discussed *infra*) and apparently no briefs were submitted to the commissioner as allowed in Minn. Reg. ES 24(d)(3).

particular clients were determined from the timesheets.

Relator claimed that when it first became aware of the fact that it was not getting as much work from claimant as it had expected, an investigation was begun. In March, Mr. Buhl did a "spot check" of the time the employees spent in the office and claimed to have found some discrepancies in claimant's records. He testified that on the basis of the timesheets and slips, Mr. James W. Copeland, relator's president, estimated that there were 118 hours unaccounted for by claimant.

Claimant stated that there was a dispute over hours and that he was told he was not productive enough. There was also testimony from both Buhl and claimant that there was dissatisfaction with the type of work assigned to claimant.

At no time was claimant ever told that relator felt he was deliberately submitting excessive payslips. Claimant specifically denied that he charged any extra time to the firm.

The timesheets kept by claimant were discussed and summarized at the hearing. They were never marked as exhibits, never offered into evidence, and are not a part of the record submitted by the Department pursuant to the writ of certiorari.

The issues before us are:

(1) May we consider documents which were seen by an administrative hearing officer, but which were neither formally offered into evidence nor transmitted as part of the record for review?

(2) Did the evidence support the findings and decision of the Department of Employment Services that claimant was involuntarily separated from his employment for reasons other than misconduct?

1. *Documents not introduced into evidence.*

The issue of whether the documents should be considered by this court was raised in prehearing motions by relator and the Department and was renewed in the briefs.

The documents which relator contends were erroneously excluded from the record consist of timesheets kept by claimant for the months of January through April 1975; relator's record of its spot check of hours spent by claimant in the office for a 14-day period; and a calculation, made by relator, of the discrepancies between the timesheets and payslips submitted by claimant. Although relator argues in its brief that the documents were offered as exhibits at a portion of the initial proceedings, the transcript does not indicate this to be the case. The only evidence for this claim is the affidavit of Dennis W. Buhl submitted in support of the motion for remand.

■ It is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered. *Moose v. Vesey*, 225 Minn. 64, 29 N.W.2d 649 (1947); *Holtberg v. Bommersbach*, 235 Minn. 553, 51 N.W.2d 586 (1952); 5 C.J.S., Appeal and Error, § 1522.

There are exceptions to this rule, however. In *Mattfeld v. Nester*, 226 Minn. 106, 32 N.W.2d 291 (1948), we upheld a trial court's postverdict reception of a certified copy of letters of special administration in a wrongful death action. There this court said:

"Although the power of appellate courts is more circumscribed * * * by the rule that an appeal must be decided solely upon the evidence produced in the trial court and shown by the record on appeal, appellate courts, *in order to sustain* verdicts and judgments, will permit omissions to be supplied by documentary evidence of a *conclusive nature.*" 226 Minn. 123, 32 N.W.2d 303 (Italics supplied.)

In *Moose v. Vesey, supra,* this court refused to consider evidence of a plat not received in evidence in a zoning case where the plat was inconclusive and controvertible and where it would have been received for the purpose of granting a reversal.

In *Crystal Beach Bay Assn. v. Koochiching County*, Minn., 243 N.W.2d 40 (1976), we went outside the record of proceedings of the county board to uphold the granting of a conditional-use permit. We relied upon detailed findings of another administrative agency, adopted after public hearings at which the appellant participated.[3]

The documents presented by relator in its motion for remand are neither conclusive nor uncontroverted. Their meaning was disputed at the appeal tribunal hearing and, except for the self-serving comparison of payslip hours and hours shown on the timesheet, they explain little standing alone. They do not meet the limited criteria for *appellate* admission of evidence as set out above. In addition to their inconclusive nature, they are offered for the purpose of reversal, not affirmance, and this court, in *Mattfeld v. Nester, supra*, indicated that production of record evidence is never allowed in an appellate court for the purpose of reversing a judgment.

Rule 110.01, Rules of Civil Appellate Procedure, states:

> "The papers filed in the trial court, the *offered* exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." (Italics supplied.)

This rule is made applicable to the present case by Rule 115.04, Rules of Civil Appellate Procedure.

Relator argues, in effect, that the exhibits were offered but that the appeal tribunal "failed to receive, accept, and mark as evidence, certain exhibits submitted by the Employer." If the proceedings below were before a trial court proceedings and relator had been represented by counsel, the argument would be without merit since there is no indication in the transcript that the exhibits were marked, offered, or rejected. However, relator was not represented by counsel at the appeal tribunal, and an administrative hearing differs from a trial court in its degree of formal adherence to evidentiary rules. See, Minn. St. 268.10, subd. 6; *Pichler v. Alter Co.*, 307 Minn. 522, 240 N.W.2d 328 (1976); Minn. Reg. ES 23(c)(4)(aa).[4] See, also, Davis, Administrative Law Text (3 ed.) § 14.06.

There is little to guide the court on the issue of whether the disputed documents should be part of the record on review. The Revised Model State Administrative Procedure Act, § 9(e)(2), in 2 Cooper, State Administrative Law, pp. 803, 813, defines the record in a contested case to include evidence "received or considered." In this case, the documents were clearly "considered."

An appeal tribunal hearing officer should be especially careful to insure fairness to all persons bringing grievances before him. Minn. St. 268.10, subd. 4, provides that appeal tribunals should include an employer's representative and an employee's representative as well as a hearing examiner. In practice, a large number of these tribunals consist only of one person. If the purpose of a three person tribunal is to insure adequate presentation of both sides, then a single hearing examiner must be vigilant to ensure that one side is not treated unfairly.[5] In this case, the hearing

---

3. Some courts have used the power to look beyond the record for the purposes of determining mootness or other post-trial procedural matters. *Baker v. Aetna Casualty & Surety Co.*, 193 S.W.2d 363 (Mo.App.1946); cf. 5 C.J.S., Appeal and Error, § 1523.

4. The regulations of the Department are of little help in determining what is a part of the record.

Minn. Reg. ES 23(c)(4)(aa) provides in part: " * * * The claimant or any other party to an appeal before an appeal tribunal may present such evidence as may be relevant."

Minn. Reg. ES 23(d)(4) limits the commissioner's review to "the transcribed testimony taken before the appeal tribunal, the exhibits, the law, and the regulations adopted by the Commissioner."

Minn. Reg. ES 23(d)(5) allows the taking of additional evidence on application to the commissioner.

5. Over 13,000 hearings were held by the Department last year. Apparently a three person panel is appointed in cases involving labor disputes and under the new law in cases involving allegations of gross misconduct. Most hearing examiners are attorneys. It would probably be prohibitively expensive to appoint a three person panel for all hearings.

examiner should have marked the exhibits on his own initiative and asked Mr. Buhl on the record whether he wished to introduce them. This does not mean that all documents offered must be admitted, but only those actually used by the hearing examiner. If documents are rejected as evidence, the reasons for the rejection should be on the record. However, in view of the sufficiency of the evidence and because we are convinced that the appeal tribunal's decision would be affirmed even if the disputed documents were considered by us, any failure to formally admit them is harmless in this case.

The disputed documents were discussed at the hearing. The purpose and function of the timesheets themselves were in controversy; the basis for the claimed discrepancy was explained by Mr. Buhl at the hearing. The *payslips* which formed the basis for relator's conclusion that extra time had been charged were not brought to the hearing, and thus any conclusion that 118 hours were deliberately overcharged would have to be based primarily on the testimony of Mr. Buhl. Consideration of the paper on which the calculation of the discrepancy was made would add little to what is in the record. One document is a comparison of hours recorded by claimant on the timesheets for time spent in the office with relator's own calculations of the same hours over a 14 day period. It is apparently relator's claim that this calculation in some way proves that claimant's payslip claims were excessive. The daily time comparison shows only that all the recordkeeping in this case was somewhat inaccurate. It is difficult to see what probative value the time comparison has since it covers a 2 week period and the claimed overcharge took place over 4 months. In any case, claimant disputes the accuracy of the records and testified that Buhl was absent from the office at certain times when he (claimant) was present.

The disputed documents appear to be in the nature of evidence used for illustrative purposes. While they do *clarify* some of the transcript discussion, they themselves are not necessarily proof of the facts in issue. Even if they were specifically considered by the appeal tribunal, the decision would have to be based upon the testimony of the two witnesses and their conflicting explanations of the documents.

*2. Sufficiency of the evidence.*

Relator claims that the evidence, viewed in the light most favorable to the Department, fails to support the finding that claimant was discharged for reasons other than misconduct.

The burden of proving disqualification from benefits under Minn. St. 268.09 is on the employer. *Johnson v. Ford Motor Co.*, 289 Minn. 388, 403, 184 N.W.2d 786, 796 (1971); *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 209 N.W.2d 397 (1973).

In addition, as conceded by relator, the findings must be viewed in a light most favorable to the decision below and must be sustained where there is evidence reasonably tending to sustain them. *Kantor v. Honeywell, Inc.*, 286 Minn. 29, 175 N.W.2d 188 (1970); *Lewis v. Minneapolis Moline, Inc.*, 288 Minn. 432, 181 N.W.2d 701 (1970). In the present case, there is sufficient evidence to support the determination of the appeal tribunal even if the disputed documents are considered.

Affirmed.