**Steven KRANSTOVER, Relator,**

v.

**BERGEN'S GREENHOUSE, Commissioner of Jobs and Training, Respondents.**

No. C6–86–2042.

Court of Appeals of Minnesota.

April 21, 1987.

Charles A. Krekelberg, John A. Hatling, Krekelberg & Stringer, Pelican Rapids, for relator.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and MULALLY,* JJ.

## OPINION

CRIPPEN, Judge.

This appeal deals with an unemployed worker's cause for declining to accept a reemployment offer. The Commissioner's representative affirmed a referee's finding that relator Steven Kranstover had declined the offer without good cause, and we affirm.

## FACTS

Between March and December 1985, relator worked sporadically for respondent Bergen's Greenhouse, located in Detroit Lakes, Minnesota. Relator drove a delivery truck for Bergen's, a flower wholesaler whose delivery points were located in Wisconsin, Michigan, North Dakota and Minne-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

sota. Bergen's was therefore engaged in interstate commerce.

Relator quit his job with Bergen's in December 1985 to work at the Detroit Mountain ski area. When that job ended in March 1986, he applied for unemployment compensation benefits. Shortly thereafter, the Bergen's sales manager contacted relator and offered him his driving job back, under the same terms and conditions as before. Because relator declined the offer, his claim for unemployment compensation was denied.

Relator appealed the department's determination, claiming that he had good cause to refuse the job with Bergen's. At a hearing before a department referee, relator testified that the schedules which Bergen's forced its drivers to maintain required that they drive more than 10 hours in a 24 hour period, in violation of Interstate Commerce Commission regulations. He claimed that Bergen's did not provide relief drivers, and pressured drivers to return to Detroit Lakes as soon as deliveries were made, so that the trucks could be used for more deliveries. This, according to relator, practically forced the drivers to falsify their log books so it would appear the ICC regulations were being observed.

The testimony of the Bergen's sales manager included admissions that he had driven over 10 hours a day on occasions and that "a lot of times" employee drivers worked beyond the maximum 10 hour shift. He acknowledged that it took "pretty heavy driving" for his small staff to complete all scheduled deliveries in the permitted shifts. On the other hand, the sales manager insisted that employees were not told to falsify their log books, and that back-up drivers were available to meet heavy demand for deliveries. He admitted that the employer wanted drivers back at the end of a day, but he insisted that drivers were allowed $25 per day motel expenses and were free ("if they want") to stay overnight before returning from a trip.

Relator claims he was fed up with the working conditions at Bergen's when he quit his job in December 1985, and that he refused the latest job offer because there was no indication the working conditions at Bergen's were improved.

The Commissioner's representative adopted a referee's finding that relator "may have felt a certain amount of pressure to drive an excessive number of hours in one day," but that Bergen's encouragement for return at the end of a trip did not rise to the level of coercion to violate the law. The representative observed that relator had worked about 30 hours per week for Bergen's, and that he had made no working condition complaints to his employer or to authorities.

Based on these findings, the Commissioner's representative found that the record did not show good cause for relator's decision to refuse reemployment. Relator appeals from the denial of his unemployment benefits.

## ISSUE

Did relator establish good cause to decline Bergen's offer of reemployment due to allegedly "deplorable and unsafe working conditions?"

## ANALYSIS

■ The failure, "without good cause" to accept a base period employer's full reemployment offer disqualifies an individual for unemployment benefits. Minn.Stat. § 268.09, subd. 2 (1986). The refusal of a job for "justifiable reasons" pertaining to the job constitutes good cause. *Lewis v. Minneapolis Moline, Inc.*, 288 Minn. 432, 437, 181 N.W.2d 701, 705 (1970) (quoting from *Swanson v. Minneapolis-Honeywell Regulator Co.*, 240 Minn. 449, 458, 61 N.W.2d 526, 532 (1953)).

The question whether an employee has demonstrated good cause is one of law. *See Lewis*, 288 Minn. at 436–37, 181 N.W.2d at 704–05. However, we must not disregard underlying findings of fact if there is evidence of record reasonably tending to sustain them. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

The Commissioner's representative reached a conclusion in this case based on a finding that Bergen's' working conditions involved some pressure but no requirement for dangerous and unlawful conduct. While it conflicts with relator's evidence, there is sufficient evidence here reasonably tending to sustain this finding. The finding characterizes working conditions at Bergen's, resolving the conflicting testimony on pressures put upon drivers and the significance of a small expense allowance.

As a matter of law, we cannot quarrel with the representative's conclusions that these working conditions did not establish good cause to refuse reemployment. "Pressure" the Commissioner found to exist did not constitute a justifiable reason for relator's decision.

## DECISION

The Commissioner's decision conforms to the law of the case and is sufficiently supported by the evidence of record.

Affirmed.