*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0546**

In re the Estate of:
Mary Ann Nething, Deceased

**Filed September 14, 2015
Affirmed in part, reversed in part, and remanded
Smith, Judge**

Meeker County District Court
File No. 47-PR-14-847

John E. Mack, Mack & Daby, P.A., New London, Minnesota (for appellant Lois Nething)

Paul A. Jeddeloh, Anthony J. Weigel, Jeddeloh & Snyder, P.A., St. Cloud, Minnesota (for respondent Mary Jean Anderson)

Chad M. Roggeman, Roggeman Law Office, P.A., St. Cloud, Minnesota (for respondent Presbyterian Family Foundation)

Considered and decided by Peterson, Presiding Judge; Stauber, Judge; and Smith, Judge.

## U N P U B L I S H E D   O P I N I O N

**SMITH**, Judge

We affirm the district court's appointment of Presbyterian Family Foundation (Presbyterian) as personal representative of decedent Mary Ann Nething's estate because the district court did not abuse its discretion in appointing Presbyterian. However, we reverse and remand the district court's appointment of Presbyterian as successor trustee

of the Nething Living Trust and simultaneous removal of the decedent's daughter Lois Nething as trustee because notice under Minn. Stat. § 501B.18 (2014) was not proper.

## FACTS

Mary Ann Nething died in August 2014. Lois Nething (Nething), the decedent's daughter, petitioned the district court to appoint Patricia Bury, the decedent's niece, as personal representative of her estate. Another daughter of the decedent, Mary Jean Anderson, objected and petitioned the court to instead appoint Presbyterian as the estate's personal representative. Presbyterian had been the decedent's emergency guardian and conservator from March to September 2014, after Meeker County Social Services removed decedent from the home she shared with Nething and began investigating Nething for caregiver neglect, financial exploitation, and isolation. Anderson also asked the court to appoint Presbyterian as trustee of the Nething Living Trust, replacing Nething. The decedent and her late husband had been the primary trustees and beneficiaries of this trust. They designated Nething as alternate successor trustee and made their nine children beneficiaries after their deaths.

Anderson raised trust issues for the first time in her answer to an amended petition that Nething filed, and the district court held an evidentiary hearing just five days later. Nething objected to the court's considering her removal as trustee because she lacked time to prepare. The court nonetheless heard the trustee removal petition.

Witnesses at the hearing were Nething, Anderson, and two of the decedent's other daughters, Susan Snelling and Karen Dye. Much of the testimony focused on Bury's suitability as personal representative. Nething admitted that Bury has four minor

2

children, has more than one job, and had only recently communicated with her. Anderson, Snelling, and Dye testified that Bury was communicating only with Nething. They asserted that Bury would protect Nething and lacked the neutrality, skill, forcefulness, or time to investigate the estate's potential claims against Nething.

Witnesses also discussed Nething. Both sides acknowledged substantial family acrimony and a lack of communication between Nething and the decedent's other children. Nething acknowledged that she had entered a personal-services contract with her parents and that there was a pending Meeker County investigation of her alleged financial exploitation. Anderson and Snelling testified that they believed that Nething had violated the personal-services contract and had taken trust property, which they argued created a conflict of interest between her and the estate. Anderson, Snelling, and Dye believed that Presbyterian, in contrast, would be neutral and efficient and would communicate as personal representative and as trustee.

In making its decision, the district court considered several documents labelled as "exhibits," including Nething's personal-services contract, that were appended to Anderson's filings. The contract showed that Nething's duties included paying all her parents' bills and doing all housekeeping in exchange for a monthly stipend and options to purchase trust property after her parents died. These options would be forfeited if Nething failed to perform to the reasonable satisfaction of her parents.

The district court also took judicial notice of its March 2014 order in the decedent's guardianship and conservatorship proceedings. In that order, the court found that the decedent's health, safety, or welfare were at risk. The decedent had severe

3

dementia, preventing her from knowing time or place, recognizing her children, or "understand[ing] any aspect of her financial situation." Decedent's housing conditions were "very poor and unsafe" due to extreme hoarding, which involved blocked exits and poultry living in the basement. She was also unable to call for help or exit the home on her own. Nething had nonetheless sometimes left her alone. Nething also had failed to pay taxes on her mother's property for 2013, failed to pay her father's 2012 funeral expenses, and charged $8,000 to her mother's credit cards.

The district court reserved its decision on whether a 2009 will submitted by Nething was valid. The court found that the family dispute would make the personal representative position "very difficult" for Bury and required a neutral party. It noted that the personal representative of the estate would have to investigate Nething's actions. It also found that Nething had breached her personal-services contract, creating a conflict of interest with the estate and the trust. The court appointed Presbyterian as personal representative of the estate and as trustee of the trust.

Nething appeals.

## D E C I S I O N

### I

Nething argues that the record in this case does not support the district court's appointment of Presbyterian, rather than Patricia Bury, as the estate's personal representative. She contends that Bury had statutory priority for appointment because Bury was nominated in the decedent's 2009 will.

4

Minnesota Statutes section 524.3-203 sets out priority for qualified persons to be appointed personal representative of an estate. Minn. Stat. § 524.3-203(a) (2014). Qualified persons who are designated by a probated will have highest priority for appointment, but the will must be probated to convey priority. *Id.* (a)(1); *see also* Minn. Stat. § 524.3-102 (2014) (stating that a will can exercise the power of appointment only after it has been declared valid). The 2009 will was not probated, so Bury did not have priority based on that will's designation.

In contrast, Anderson contends that Presbyterian had priority as personal representative. Anderson notes that a conservator of the decedent may have priority if it has not been discharged and if no representative has been appointed 90 days after the decedent's death. Minn. Stat. § 524.3-203(a)(7). But Presbyterian's emergency conservatorship of decedent ended in September 2014. Because Presbyterian was not the decedent's conservator at the time of its January 2015 appointment as decedent's personal representatives, this statutory paragraph is also inapplicable.

Neither conclusion ends the analysis. A person need not have priority in her own right to be appointed as personal representative. A person who has priority may nominate someone else. *Id.* (c) (2014). And the district court can unilaterally appoint a person without priority if it determines that administration is necessary and those persons with priority had notice of the proceedings and failed to request appointment or nominate another. *Id.* (e) (2014).

Both Nething and Anderson potentially had priority status as the decedent's heirs, *see id.* (a)(5) (granting priority to a decedent's heirs), (c) (2014); *see also* Minn. Stat.

5

§ 524.2-103(1) (2014) (making a decedent's descendants her heirs), and this priority would allow them to nominate others. Minn. Stat. § 524.3-203(c). But the person nominated must be qualified. *Id.* And no person is qualified if the court in formal proceedings finds her unsuitable to serve as personal representative. *Id.* (f)(2) (2014). The court's suitability inquiry should examine whether the person "appears to be equipped by temperament, experience, and sagacity to discharge the trust with fidelity, prudence, and promptness . . . having regard to the special conditions of each estate and those interested in it as creditors, legatees, and next of kin." *In re Estate of Crosby*, 218 Minn. 149, 157, 15 N.W.2d 501, 506 (1944) (quotation omitted). "The district court has discretion to determine suitability of a personal representative," and we will not reverse that determination "unless the district court clearly abused its discretion by disregarding the facts." *In re Estate of Martignacco*, 689 N.W.2d 262, 269 (Minn. App. 2004) (citing *Estate of Crosby*, 218 Minn. at 157-58, 15 N.W.2d at 506, and *In re Estate of Michaelson*, 383 N.W.2d 353, 356 (Minn. App. 1986)).

The district court was within its discretion to determine that the estate's unique challenges made Bury unsuitable and that she was therefore not qualified to serve as personal representative. The court likewise acted within its discretion in determining that Presbyterian's neutrality, professionalism, and willingness to communicate qualified it to act as personal representative.

A remaining difficulty is that a nomination generally requires agreement, or at least acquiescence, among those sharing priority. Minn. Stat. § 524.3-203(c). Nething obviously did not concur in Anderson's nomination. But Nething's own shared priority

as an heir depended on her being qualified. *See id.* (a), (c). The district court squarely implied that Nething was unsuitable and not qualified through its finding that the estate's personal representative would have to investigate Nething for breach of the personal-services contract and her duties as trustee. And the record supports this discretionary determination because Nething herself recognized that she was still under investigation for financial exploitation and because findings in the guardianship file allow a reasonable conclusion that she lacked prudence as her mother's caregiver. Moreover, when coupled with evidence of Nething's contractual duties, the guardianship file findings suggest that Nething lacks the fidelity to carry out her obligations.

Nething contends that the district court could not take judicial notice of findings in its emergency-guardianship file order, but we disagree. Courts may take judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Minn. R. Evid. 201(b). These kinds of unassailable facts include orders issued in another proceeding of the same court. *Matter of Welfare of Clausen*, 289 N.W.2d 153, 157 (Minn. 1980). And in taking judicial notice of its own order, the district court may rely on the order's findings. *Matter of Zemple*, 489 N.W.2d 818, 820 (Minn. App. 1992).

Nething also objects to the district court's consideration of the marked exhibits that Anderson filed with her petition, including her personal-services contract. Nething does not dispute that these documents are properly part of the appellate record. But she complains that they were never formally admitted as evidence at the hearing.

We may not consider "matters not produced and received in evidence below," *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977), but a party need not formally present documents as evidence for the files to be considered, *Phillips-Klein Cos., Inc. v. Tiffany P'ship*, 474 N.W.2d 370, 374 (Minn. App. 1991). In *Phillips-Klein*, we refused to strike documents that the district court considered and referred to in its order. *Id.* A party had left these documents with the district court at a hearing but had never formally offered them as evidence or marked them as exhibits. *Id.* In this case, Anderson filed the personal-services contract with the court, and the district court treated the contract as evidence in its order, explicitly citing to it as "exhibit." Moreover, Nething does not contest the authenticity of this document. *Cf. Mattfeld v. Nester*, 226 Minn. 106, 123, 32 N.W.2d 291, 303-04 (1948) (allowing appellate courts to affirm based on "documentary evidence of a conclusive nature" even if that documentary evidence is outside the record). Because the document was filed with the district court and was considered as evidence by that court, and because its substance has not been challenged, we do not strike this documentary evidence supporting the district court's decision.

The district court's well-supported discretionary determination that Nething is unsuitable divests her of statutory priority she may have had to nominate Bury. This leaves Anderson as the only qualified person with statutory priority who actually nominated anyone or sought appointment. The district court did not abuse its discretion by appointing Anderson's nominee, Presbyterian, as the estate's personal representative.

8

## II

Nething argues that the district court did not have jurisdiction to remove her as successor trustee of the Nething Living Trust because Anderson did not follow statutory removal procedures. Nething concedes that the probate court could entertain an action to remove a trustee. But she insists that the statutory notice procedures of Minnesota Statutes section 501B.18 must be followed.

A person interested in a trust may petition the district court for an order to remove a trustee for cause. Minn. Stat. § 501B.16(9) (2014). But the statute sets out procedures for removal petitions. Minn. Stat. §§ 501B.17, .18 (2014). The district court must order a time and place for a hearing upon receiving a petition for removal. Minn. Stat. § 501B.18. And the petitioner must provide notice by publishing a copy of this order at least 20 days before the hearing and by mailing the order to known or reasonably ascertainable trust beneficiaries at least 15 days before the hearing. *Id.* Alternatively, "Notice may be given in any other manner the court orders." *Id.*

Anderson filed her request for Nething's removal as trustee just five days before the hearing. Anderson's late filing made the statutory 15-day notice to trust beneficiaries, including Nething, impossible. And because the district court never issued an order setting a time and place to hear the trustee-removal issue, Anderson did not even have the information needed for mailed notice. Moreover, the district court did not order any alternative notice. Anderson and the district court failed to comply with statutory notice requirements.

9

In the parallel context of probate petitions, "failure to give proper notice to interested parties of the hearing on a petition . . . is an irregularity which renders the subsequent proceedings voidable and subject to be set aside on motion or appeal." *Hanson v. Nygaard*, 105 Minn. 30, 37, 117 N.W. 235, 238 (1908). Our supreme court has required probate courts to strictly observe statutory notice requirements, including publication and mailing of the order fixing time and place of hearing. *In re Estate of Stenzel*, 210 Minn. 509, 517-18, 299 N.W. 2, 6 (1941). The failure to follow statutory notice requirements requires us to set aside Nething's removal as trustee.

Nething alternatively argues that the record does not support her removal. In light of our reversal for lack of notice, we do not reach this issue.

**Affirmed in part, reversed in part, and remanded.**