*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0827**

Michael Rodriguez,
Relator,

vs.

Arrowhead Economic Opportunity Agency,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed January 19, 2016**
**Affirmed**
**Stauber, Judge**

Department of Employment and Economic Development
File No. 33228099-3

Diane L. Longrie, Maplewood, Minnesota (for relator)

Arrowhead Economic Opportunity Agency, St. Louis, Missouri (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Halbrooks, Presiding Judge; Stauber, Judge; and Reyes, Judge.

**STAUBER**, Judge

In this certiorari appeal from an unemployment-law judge (ULJ) decision, relator argues that he should be eligible for unemployment benefits because the conduct for which he was discharged did not constitute misconduct and challenges his employer's failure to disclose certain evidence before his unemployment hearing. We affirm.

**FACTS**

Relator Michael Rodriguez was employed by respondent Arrowhead Economic Opportunity Agency (Arrowhead) from January 24, 2013, to December 23, 2014, as a part-time bus driver. Arrowhead is a nonprofit agency that provides transportation services in northeastern Minnesota. Relator was discharged for poor driving practices and for failing to complete required bus inspections.

Three incidents comprise the factual basis for relator's dismissal from employment. In January 2014, relator received a written warning after a client complained that he was driving "way too fast." Relator's immediate supervisor, transit manager Voni Smolke, reviewed three days of camera footage from relator's bus that showed relator driving 80 miles per hour (mph) in a 70 mph posted speed-limit area. Smolke testified that this conduct violated Arrowhead's policy for drivers "to drive the posted speed limit." Relator denied that he was driving too fast but admitted that he might have driven up to 76 mph in order to merge into traffic.

On December 14, 2014, a Walmart customer complained to Arrowhead about relator's "very erratic driving" on the previous day. The bus video from that date shows

relator entering the Walmart parking lot by turning into a "do not enter" entrance that is restricted to delivery vehicles.[1] As relator approaches Walmart's main entrance, he does not stop at a stop sign, and, as he proceeds forward, an elderly gentleman located in a crosswalk must "scoot to get out of the way." Relator then drives on the sidewalk to complete a three-point turn near two children and two adults, one of whom made the complaint to Arrowhead. When leaving Walmart, relator again uses the prohibited entrance, which is marked "do not enter" from both directions, stating: "I don't care what it says. I can do whatever I want." Finally, relator makes a wide turn to enter traffic.

The third ground for relator's dismissal is his failure to complete required bus inspections. Relator testified that he always does a full inspection including testing the wheelchair ramp. Smolke reviewed three days of videos that included relator's bus inspections and discovered that relator did not complete the portion of his required inspections that includes ensuring that the wheelchair lift is operational. At the hearing before the ULJ, relator's attorney objected to Smolke's testimony, arguing that the videos were not provided to relator before the hearing. The ULJ took the objection under advisement but decided the case without specifically ruling on the motion.

Relator testified that his dismissal was pretextual and that "the real reason [for his dismissal] is because I took a stand on my religious belief to not work on Sunday . . . and

---

[1] Contemporaneously with making this turn, relator says "bull crap." The audio portion of the video does not clarify whether that comment is made in response to something said by a passenger or in response to the "do not enter" sign.

[because I] became shop steward in the union." The ULJ rejected this argument, determining that "[t]he event that immediately preceded [his] termination was Arrowhead receiving a complaint about his driving," and that his driving conduct formed the basis for Arrowhead's decision to discharge him.

The ULJ decided that relator was dismissed for misconduct and therefore ineligible to receive unemployment benefits. The ULJ relied "primarily on the video evidence" from the December 13 Walmart incident, and "the testimony of Arrowhead's witnesses." After the ULJ affirmed this decision on reconsideration, relator initiated this certiorari appeal.

## D E C I S I O N

Among other reasons, this court may reverse, modify, or remand a ULJ's decision if the petitioner's rights have been prejudiced because the decision was "made upon unlawful procedure," "affected by other error of law," or "unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 268.105, subd. 7(d)(3)-(5) (Supp. 2015). This court views the ULJ's findings of fact "in the light most favorable to the decision" and gives deference to the ULJ's credibility determinations. *Peterson v. Nw. Airlines, Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008).

## I.     Misconduct determination

An applicant is ineligible to receive unemployment benefits if the applicant was discharged for misconduct. Minn. Stat. § 268.095, subd. 4(1) (2014). Employment misconduct is defined by statute as "any intentional, negligent, or indifferent conduct"

4

that clearly displays "(1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. Filmtec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether the employee committed a particular act is a question of fact, and whether the act constitutes employment misconduct is a question of law subject to de novo review. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Factual findings will not be disturbed if there is substantial evidence to sustain them. *Id*. at 345.

Relator challenges the ULJ's determination that his driving through a stop sign located on Walmart property was reckless and that his overall driving conduct showed an intentional disregard of Arrowhead's policies. As to going through a stop sign on Walmart property, Smolke testified that relator's driving conduct on December 13 "totally [went] against all company policies and safety violations" and violated traffic laws. When specifically addressing the failure to stop at a stop sign, she said Arrowhead employees go through training and "are well aware of their safety rules, company policies," which do not permit drivers to "run stop signs." Although Smolke's testimony was contradicted by relator's testimony that stopping at stop signs on private property was discretionary, the ULJ was free to credit Smolke's testimony rather than relator's. *See Skarhus*, 721 N.W.2d at 345 (stating that it is ULJ's responsibility to make credibility determinations).

5

Contrary to relator's assertion, the record also supports that relator's driving conduct was intentional. When confronted with the "do not enter" sign, relator said "I don't care what it says. I can do whatever I want," and turned into that entrance. Relator's other driving conduct on December 13 also supports a finding that his conduct was intentional: he entered Walmart through a prohibited entrance, did not stop at a stop sign, drove close to one pedestrian, turned onto a sidewalk in front of four other pedestrians, turned around on a sidewalk, and exited through a prohibited road. Given that Smolke testified that relator's conduct violated the employer's policies, relator's numerous examples of poor driving on December 13 strongly demonstrate a deliberate decision not to abide by Arrowhead's reasonable policies, and therefore provide a proper basis for the misconduct determination. *See Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn. 2002) (stating that for purposes of disqualifying an employee from receiving benefits, the employee's "conduct[,] to be intentional, . . . must be deliberate").

## II.     Procedural defect

Relator also argues that the ULJ erred by proceeding with the hearing after he objected to the employer's failure to provide him a copy of the video showing his bus inspections. Relator relies on case law requiring fairness and full development of facts in ULJ proceedings. *Ywsuf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 529 (Minn. App. 2007); *Miller v. Int'l Express Corp.*, 495 N.W.2d 616, 618 (Minn. App. 1993). In an unemployment hearing, the ULJ "must exercise control over the hearing procedure in

6

a manner that protects the parties' rights to a fair hearing" and "ensure that all relevant facts are clearly and fully developed." Minn. R. 3310.2921 (Supp. 2014).

The Minnesota Rules "establish procedures for hearings conducted by unemployment law judges." Minn. R. 3310.2901 (Supp. 2014). The notice of hearing on appeal from an ineligibility determination must include "a statement that the parties should arrange in advance for the participation of witnesses they need to support their position," "a statement that a party may find out . . . names of the witnesses that the other party intends to have testify at the hearing, and an explanation of the process for making the request," "a statement that subpoenas may be available to compel the . . . production of documents," and "a statement and documents submitted by the parties that documents contained in the department's records that will be introduced at the hearing as possible exhibits will be sent to the parties in advance of the hearing." Minn. R. 3310.2905, subp. 2(D)-(G) (Supp. 2014). A hearing may be rescheduled before the hearing in order to permit a party "additional time to obtain necessary evidence," or continued due to "the need to obtain documents." Minn. R. 3310.2908, subps. 1-2 (Supp. 2014).

Further, parties "may" submit their exhibits to the department, and the department will mail or electronically transmit them to all parties in advance of the hearing. Minn. R. 3310.2912 (Supp. 2014). In addition to this procedure, the ULJ may admit other documents into evidence at the hearing, leaving the record "open for sufficient time for the submission of a written response to the documents." *Id*. Under the second scenario, the ULJ "may, when appropriate, reconvene the hearing to obtain a response or permit cross-examination regarding the late filed exhibits." *Id*.

7

In advance of the unemployment hearing, Arrowhead provided to relator the video showing relator's December 13 driving conduct, and the video was played at the hearing. No other videos were offered into evidence by Arrowhead, and the ULJ relied heavily on the December 13 incident in reaching its decision. Under these circumstances, any claimed error in the ULJ's handling of this issue does not mandate a remand for a new hearing or further proceedings. *See* Minn. R. 3310.2922 (Supp. 2014) ("[A ULJ] is not bound by statutory and common law rules of evidence. The rules of evidence may be used as a guide in determining the quality of evidence offered."); *cf. Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 585 (Minn. 1977) (stating with regard to documents "presented and discussed" at a ULJ hearing but not included in the evidence on appeal, that "in view of the sufficiency of the evidence and because we are convinced that the appeal tribunal's decision would be affirmed even if the disputed documents were considered by us, any failure to formally admit them is harmless").

**Affirmed.**